1  KILPATRICK TOWNSEND & STOCKTON LLP
   GREGORY S. GILCHRIST (State Bar No. 111536)
2  ggilchrist@kilpatricktownsend.com
   SOPHY MANES (State Bar No. 287583)
3  smanes@kilpatricktownsend.com
   Two Embarcadero Center, Suite 1900
4  San Francisco, CA  94111
   Telephone:   415 576 0200
5  Facsimile:   415 576 0300

6  Attorneys for Defendant/Counterclaimant
   THE WINE GROUP LLC

7

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                  **OAKLAND DIVISION**

11

12 JAM CELLARS, INC.,                      | Civil Action No. Case No. 4:19-cv-01878-HSG

13        Plaintiff,                       | **DEFENDANT THE WINE GROUP LLC'S MOTION FOR SUMMARY JUDGMENT**

14     v.

15 THE WINE GROUP LLC,                     | Date:       March 12, 2020
                                           | Time:       2:00 p.m.
16        Defendant.                        | Crtrm:      2, 4th Floor
                                           | Judge:      Hon. Haywood S. Gilliam Jr.
17

                                           | Complaint Filed:       April 8, 2019
18 AND RELATED COUNTERCLAIMS

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 12, 2020, at 2:00 p.m., or as soon as the matter may be heard, in Courtroom 2, 4th floor of the United States District Court for the Northern District of California, Oakland Division, 1301 Clay Street, Oakland, CA 94612, the Honorable Haywood S. Gilliam Jr. presiding, Defendant/Counterclaimant The Wine Group LLC ("TWG") will move the Court for an order of summary judgment against all of Plaintiff/Counterdefendant JaM Cellars, Inc.'s ("JaM") claims, namely (1) federal trademark infringement; (2) federal unfair competition; (3) California unfair competition; (4) California false or misleading statements; (5) California trademark dilution; (6) common law trademark infringement; and (7) common law unfair competition. TWG's motion is based on the fact that there is no genuine dispute as to any material fact and that TWG is entitled to judgment as a matter of law because (1) there is no likelihood of confusion between JaM's BUTTER trademark and TWG's use of the phrase "Rich & Buttery" to describe its wine; and (2) TWG's use of "Rich & Buttery" is protected by the fair use doctrine. This motion is based on this Notice of Motion, the Memorandum and Points of Authorities below, the Declarations of Sophy Manes and Collin Cooney and accompanying exhibits, all pleadings and papers filed in this action, and all other matters or arguments that may be presented in connection with this motion.

Dated:  February 5, 2020

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By:      */s/Gregory S. Gilchrist*
GREGORY S. GILCHRIST
SOPHY T. MANES
Attorneys for Defendant/Counterclaimant
The Wine Group LLC

1

**TABLE OF CONTENTS**

2   I.   INTRODUCTION ...................................................................................1

3   II.   STATEMENT OF UNDISPUTED FACTS ............................................2

4       A.   TWG's FRANZIA Brand is the Most Popular Wine Brand in
            the World..................................................................................2
5

6       B.   TWG Launches a New FRANZIA Flavor-First Tier of
            Products and Refreshes Its Packaging.....................................3

7       C.   JaM Uses the BUTTER Mark for its Buttery Chardonnay. ...........7

8       D.   Many Third Parties Use BUTTER-formative Terms or Marks
            for Wine. ..................................................................................9
9

10   III.   THE APPLICABLE LAW REQUIRES SUMMARY JUDGMENT..........11

11       A.   The Summary Judgment Standard ........................................11

12       B.   TWG is Entitled to Summary Judgment Because, as a Matter
            of Law, There is No Likelihood of Confusion.........................12

13           1.   Survey Evidence Shows That Confusion is Unlikely. .........13

14           2.   JaM's BUTTER Mark is Weak and Entitled to a
                 Narrow Scope of Protection.........................................14
15

16           3.   TWG's "Rich & Buttery" Phrase is Not Similar to
                 JaM's BUTTER Mark..................................................16

17           4.   The Parties' Products Are In Different Wine
                 Categories.................................................................18
18

19           5.   There is No Likely Expansion of TWG's FRANZIA
                 Wine or JaM's Wines Into the Others Category ................19

20           6.   TWG's Intention Was to Clearly and Overtly Identify
                 a Flavor of Wine, Not to Appropriate JaM's
21              Trademark .................................................................20

22           7.   In Summary, There is No Likelihood of Confusion. ...........20

23       C.   TWG is Entitled to Summary Judgment Based on its Fair Use
            of "Rich & Buttery." ................................................................21
24

25           1.   TWG is Not Using the Words "Rich & Buttery" as a
                 Trademark. ...............................................................22

26           2.   TWG Chose Known and Accessible Descriptive
                 Words to Convey the Flavor Profile to its Chardonnay........23
27

28           3.   TWG Uses the Words "Rich & Buttery" Fairly and in
                 Good Faith.................................................................24

1

IV.    CONCLUSION ..........................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*ADG Concerns, Inc. v. Tsalevich LLC*,
    2018 WL 4241967 (N.D. Cal. Aug. 31, 2018)............................................................................ 12

*AMF, Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979)...................................................................................*passim*

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................................. 11

*Bell v. Harley Davidson Motor Co.*,
    539 F. Supp. 2d 1249 (S.D. Cal. 2008) ........................................................... 11, 20, 25

*Cairns v. Franklin Mint Co.*,
    292 F.3d 1139 (9th Cir. 2002)............................................................................................... 21

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................................. 11

*Cleary v. News Corp.*,
    30 F.3d 1255 (9th Cir. 1994)................................................................................................. 12

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*,
    125 F.3d 28 (2nd Cir. 1997).................................................................................................. 25

*Dessert Beauty, Inc. v. Fox*,
    568 F. Supp. 2d 416 (S.D.N.Y. 2008) ......................................................................... 22, 23

*Dr. Seuss Enters., v. L.P. ComicMix LLC*,
    256 F. Supp. 3d 1099 (S.D. Cal. 2017) ............................................................................. 25

*E. & J. Gallo Winery v. Consorzio del Gallo Nero*,
    782 F. Supp. 457 (N.D. Cal. 1991) ..................................................................................... 17

*Eli Lilly & Co. v. Revlon, Inc.*,
    577 F. Supp. 477 (S.D.N.Y. 1983)....................................................................................... 22

*Entrepreneur Media, Inc. v. Smith*,
    279 F.3d 1135 (9th Cir. 2002)............................................................................................... 15

*First Brands Corp. v. Fred Meyer, Inc.*,
    809 F.2d 1378 (9th Cir. 1987)............................................................................................... 17

*First Nat'l Bank of Omaha v. Autoteller Sys. Serv. Corp.*,
    1988 WL 252335 (TTAB Aug. 24, 1988) ......................................................................... 16

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   618 F. 3d 1025 (9th Cir. 2010)........................................................................................24

*Halo Mgmt., LLC v. Interland, Inc.*,
   308 F. Supp. 2d 1019 (N.D. Cal. 2003) .........................................................................15

*Hero Nutritionals LLC v. Nutraceutical Corp.*,
   2013 WL 4480674 (C.D. Cal. Aug. 16, 2013)..............................................................15

*Instant Media, Inc. v. Microsoft Corp.*,
   2007 WL 2318948 (N.D. Cal. Aug. 13, 2007)........................................................14, 15

*Int'l Stamp Art, Inc. v. U.S. Postal Serv.*,
   456 F.3d 1270 (11th Cr. 2006)......................................................................................24

*Jam Cellars, Inc. v. Vintage Wine Estates, Inc.*,
   2017 WL 2535864 (N.D. Cal. June 12, 2017) ..............................................................24

*Kern v. Mindsource, Inc.*,
   225 F.3d 663 (9th Cir. 2000)........................................................................................17

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111 (2004)........................................................................................21, 22, 24

*M2 Software, Inc. v. Madacy Entm't*,
   421 F.3d 1073 (9th Cir. 2005)......................................................................................12

*Marketquest Grp., Inc. v. BIC Corp.*,
   862 F.3d 927 (9th Cir. 2017)........................................................................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ......................................................................................................12

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,
   804 F.3d 930 (9th Cir. 2015)..................................................................................11, 13

*Nabisco, Inc. v. Warner-Lambert Co.*,
   220 F.3d 43 (2d. Cir. 2000)....................................................................................17, 18

*Network Automation, Inc. v. Hewlett-Packard Co.*,
   2009 WL 5908719 (C.D. Cal. Sept. 14, 2009)........................................................18, 19

*Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*,
   2015 WL 9266497 (N.D. Cal. Dec. 18, 2015) ..............................................................14

*One Indus., LLC v. Jim O'Neal Dist., Inc.*,
   578 F.3d 1154 (9th Cir. 2009)......................................................................................15

*Packman v. Chicago Tribune, Co.*,
   267 F.3d 628 (7th Cir. 2001).............................................................................11, 17, 22, 25

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
  469 U.S. 189 (1985) ............................................................................................. 9, 15

*Pinterest, Inc. v. Pintrips, Inc.*,
  140 F. Supp. 3d 997 (N.D. Cal. 2015) ......................................................................... 19

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
  354 F.3d 1020 (9th Cir. 2004) ...................................................................................... 20

*Playboy Enters., Inc. v. Terri Welles, Inc.*,
  78 F. Supp. 2d 1066 (S.D. Cal. 1999) ......................................................................... 25

*Schmid Labs. V. Youngs Drug Prods. Corp.*,
  482 F. Supp. 14 (D.N.J. 1979) ............................................................................... 22, 23

*Streetwise Maps, Inc. v. VanDam, Inc.*,
  159 F.3d 739 (2d Cir. 1998) ........................................................................................ 17

*Surfvivor Media, Inc. v. Survivor Prods.*,
  406 F.3d 625 (9th Cir. 2005) ........................................................................................ 11

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
  305 F.3d 894 (9th Cir. 2002) ........................................................................................ 13

*TPI Holdings, Inc. v. Trailertrader.com, LLC*,
  126 U.S.P.Q.2d 1409 (T.T.A.B. 2018) ........................................................................ 16

**Statutes**

15 U.S.C. §1065 ..................................................................................................................... 9

15 U.S.C. § 1115(b)(4) ........................................................................................... 21, 22, 24

15 U.S.C. § 1127 ................................................................................................................... 22

Cal. Bus. & Prof. Code § 1427(b)(1) ................................................................................... 21

**Other Authorities**

2 McCarthy on Trademarks and Unfair Competition (5th ed.) ................................... 1, 15, 21

4 McCarthy on Trademarks and Unfair Competition (5th ed.) ............................................. 21

Fed. R. Civ. P. 56(c) ............................................................................................................. 11

https://en.wikipedia.org/wiki/Diacetyl ................................................................................... 4

1

## I.    INTRODUCTION

Plaintiff JaM Cellars, Inc. ("JaM") is trying to use litigation to prevent The Wine Group LLC ("TWG") from using the adjective "buttery" to describe TWG's Chardonnay. Just as no single entity has the exclusive right to use "creamy," "juicy," "jammy," "spicy," or any other wine descriptor, JaM has no monopoly over the term "buttery"—despite JaM's trademark registration for the mark BUTTER. The case should be dismissed.

Summary judgment is appropriate for two reasons. First, JaM has no evidence that TWG's characterization of its FRANZIA boxed Chardonnay as "Rich & Buttery" is likely to create confusion with JaM's BUTTER bottled wine. The FRANZIA brand is iconic and consumers will quickly and easily understand that the new Bold Blends Chardonnay comes from FRANZIA. Like the entire FRANZIA boxed wine portfolio, the FRANZIA Bold Blends Chardonnay bears iconic FRANZIA branding and distinctive packaging—including the FRANZIA logo prominently featured at the top center of the box. Although it is unmistakably a FRANZIA wine, because the new Bold Blends Chardonnay is sold on shelves amidst all of the other FRANZIA products, TWG wanted its new packaging to have sufficient unique design elements to differentiate it from and minimize consumer substitution of the FRANZIA base tier Chardonnay. One of those principal differentiators is the "Rich & Buttery" descriptor—a well-known flavor profile for Chardonnay—which immediately tells consumers that the product is a buttery, flavor-forward Chardonnay they might try, and not the base tier FRANZIA Chardonnay with which they may be familiar. No data or evidence supports JaM's claim that this flavor description will cause consumers to be confused about the source of TWG's product.

Second, even if there were potential confusion, TWG's use of "Rich & Buttery" is protected by the fair use doctrine. TWG is using "Rich & Buttery" to describe the flavor characteristics of TWG's wine. JaM cannot restrain this description in order to have free competitive rein for itself within a popular wine segment. "The policies of free competition and free use of language dictate that trademark law cannot forbid the commercial use of terms in their descriptive sense." 2 McCarthy on Trademarks and Unfair Competition § 11:45 (5th ed.). If any confusion had resulted from TWG's use, that was a risk JaM accepted when it decided to adopt the

descriptive term BUTTER as its trademark for Chardonnay. JaM knew then that it would have no recourse when other producers, as many have done, used the common term to describe the flavor of their own wines.

████████████████████████████████████████████████████████ Its case boils down to JaM's wishful thinking that it can use its trademark to micromanage the size of the font TWG uses when it communicates the flavor of the wine to consumers. JaM relies, however, on utter speculation for both points it must prove, first, that consumers are likely to believe TWG's heavily branded FRANZIA wine originates from JaM, and second, that consumers fail to understand the completely obvious message the package conveys, that this FRANZIA Chardonnay has a "rich" texture and "buttery" flavor. This kind of anti-competitive speculation cannot survive summary judgment.

## II.     STATEMENT OF UNDISPUTED FACTS

### A.     TWG's FRANZIA Brand is the Most Popular Wine Brand in the World.

TWG is one of the largest wine producers by volume in the world. Declaration of Collin Cooney ("Cooney Decl.") ¶ 2. It sells wine under a number of brands, one of which includes the FRANZIA brand. *Id*. Sold for more than 100 years, the FRANZIA brand is the No. 1 wine brand in the world by volume—a position it has held for 24 consecutive years—and a top 20 wine brand across all age groups. *Id.* ¶ 3.

FRANZIA wine is sold in a box, not a bottle. *Id.* at ¶ 4; Declaration of Sophy Manes ("Manes Decl."), Ex. 1 ("Cooney Dep.") at 18:2-3. TWG offers over 50 SKUs of FRANZIA boxed wine varietals and blends. Cooney Decl. ¶ 4. The majority of the varietals and blends are offered in five liter boxes—which amount to 6.7 750 ml bottles of wine (the standard wine bottle size). *Id*. In a few states, TWG sells three liter boxes, comprising the equivalent of four 750 ml bottles of wine. *Id*. The FRANZIA brand's ██████████████████████████████████ ████████████████████████████████. *Id.*; Manes Ex. 2 ("Hoefs Dep.") at 67:6-13; Cooney Ex. 4 at 9978.

Known for its classic "white box," FRANZIA wines for many years have featured a white background on all sides of the box. Cooney Decl. ¶ 5. The classic design included a front panel

with a background image of wine being poured into a glass with an overlay of the FRANZIA logo prominently featured at the top of the box. Cooney Decl. ¶ 5. Over the FRANZIA brand, the packaging stated "The World's Most Popular Wine." Cooney Decl. ¶ 5. A variation of the FRANZIA logo and wine pour have been displayed on the FRANZIA wine box since the 1990s. *Id.* On this package, a banner announcing the varietal or blend protruded from the left front of the box into the wine pour image. *Id.* With rare exception for a colored box, every FRANZIA wine contained these basic, iconic features. *Id.* An example is shown below:



*Id.*

### B.   TWG Launches a New FRANZIA Flavor-First Tier of Products and Refreshes Its Packaging.

TWG knew that ███████████████████████████████████████████ ██████████████████████ Cooney Decl. ¶ 6. But, TWG wanted to r██████████ ████████████████████████████████████████████████████████ ████████████████████████████ Cooney Decl. ¶ 6. Accordingly, TWG decided to rejuvenate FRANZIA's brand image. *Id.*; Cooney Ex. 4 at 9979-9983, 9989-990. ████████████████████████████████████████████████ ███████████████████████████████████████ Hoefs Dep. 19:25-20:17; Cooney Ex. 1 at 346; Cooney Dep. 24:21-26:18; Cooney Decl. ¶¶ 6, 11 The tier name TWG selected for the brand extension was "Bold Blends," to signal that consumers could expect "bold" flavors from wines within the line. Cooney Decl. ¶ 11; Cooney Dep. 94:18-95:2. ███████████ ███████████████████████████████████████████████ ████████ Cooney Decl. ¶ 13; Manes Ex. 3 ("WD Dep.") at 58:8-13.

1   ███████████████████████████████████████████ TWG

2   decided that one of its new flavor-first wines would be a buttery Chardonnay.[1] Cooney Decl. ¶ 13;

3   Cooney Ex. 3 at 978; Manes Ex. 5 ("Dubiel Dep.") at 138:5-14.

4       At the same time, TWG decided to refresh all of its packaging for FRANZIA wines (to be

5   paired with an advertising campaign). Cooney Decl. ¶¶ 5, 6, 8; Cooney Dep. at 184:15-25; Cooney

6   Ex. 3 at 974, Ex. 4 at 9986-9987. TWG hired a design consultant, Winter Designs, to assist in

7   modernizing the look of its FRANZIA products—without sacrificing any brand equity. Cooney

8   Decl. ¶ 7; Cooney Ex. 4 at 986 ("████████████████████████████

9   ███"). The updated packaging that TWG adopted retains the iconic FRANZIA branding element

10  at the top, rendered as usual in black typeface on a white area of the box, under the phrase "Over

11  100 Years of Winemaking." Cooney Decl. ¶ 9. The new boxes are not all white as were their

12  predecessors but instead include a color side panel that signals the varietal or blend of wine in the

13  box. *Id.* ¶ 10; WD Dep. at 42:11-43:11. This color also frames the rectangular banner protruding

14  horizontally from the left-front side of the box which identifies the varietal/blend of wine in bolder

15  text. Cooney Decl. ¶ 10. New segments of the banner also were introduced signaling that

16  FRANZIA was "Founded by Teresa Franzia" and, in a globe icon, that FRANZIA is "The World's

17  Most Popular Wine." *Id.* On the base tier products, a crest is shown on the top left of the box front

18  (underneath the FRANZIA logo) which indicates that "Franzia Bros. Vineyard" was "Founded in

19  1908." *Id.* These distinctive features of the FRANZIA wine box are shown below, again using the

20  base tier, traditional Chardonnay product as an example. *Id.*

21

22

23  

24

25

26

27  _____

[1] Wines that undergo malolactic fermentation produce a byproduct called diacetyl, a compound
that is present in butter, margarine and other butter flavored products.

28  https://en.wikipedia.org/wiki/Diacetyl. Naturally, the compound also imparts buttery aromas and
flavors to wines that contain it. Manes Ex. 4 ("Truchard Dep.") 83:12-21, 84:2-6, 144:23-145:7.

TWG quickly decided it was necessary to use a descriptor to reinforce the proposed flavor-forward taste profile that TWG was delivering in its new wine. Cooney Dep. 103:7-20, 104:14-17; Cooney Decl. ¶ 14. For Chardonnay, "butter" and "buttery" are used throughout the wine industry by producers and retailers to convey that the wine has undergone malolactic fermentation and will have a creamy texture and buttery taste. Truchard Dep. 84:1-6; 100:14-101:4; 166:6-10, 101:25-102:2, 135:16-20; 156:2-12; Manes Exs. 7, 8, 10-13, 15-21. The UC Davis Viticulture and Enology program has created a flavor and aroma wheel for use in describing wines. Manes Ex. 22; Truchard Dep. 146:24-147:8. "Buttery" is a known flavor profile that is relevant to many wines, but primarily for Chardonnay. Truchard Dep. 100:14-101:4; 166:6-10, 101:25-102:2, 135:16-20; Manes Exs. 7, 8, 10, 11, 13-19, 56 at 115:14-20. The term is particularly useful as a descriptor for ordinary consumers who would find "buttery" to be understandable but might not easily conceptualize more esoteric terms that are applied by connoisseurs; e.g. "eucalyptus," "graphite," or "anise." Cooney Decl. ¶ 14.

For its new FRANZIA Bold Blends wines, TWG wanted to develop a packaging design that ████████████████████████████████████████████████████████████ ████████████████████████████████. Cooney Decl. ¶ 15; Dubiel Dep. 92:22-93:8, 131:13-18; Cooney Dep. 83:16-25; Cooney Ex. 4 at 9990; WD Dep. 29:12-30:9. At the same time, TWG needed the new Bold Blends line to remain consonant with the rest of the FRANZIA boxed wine products. Cooney Decl. ¶ 15; Cooney Ex. 4 at 990 ("██████████████████████"). Ex. 6 (██████████████████████████████████████████); WD Dep. at 44:18-45:24; Dubiel Dep. 157:10-14. TWG retained Winter Designs for this design effort as well, asking it to create a ██████████████████████████████████ ████████████████████████████████████████ ██████ Cooney Decl. ¶ 16; Cooney Ex. 4 at 9990, Ex. 7 at 591-592; *see also* WD Dep. 44:18-45:24. ████████████████████████████████████ and this holds true in FRANZIA's line. *See* Truchard Dep. 155:12-16; Cooney Decl. ¶ 15. Accordingly, the package for TWG's new "buttery" Chardonnay needed to ████████████████████████████████

1  ███████████████████████████████████████████████████████████████

2  ████████████████████████████████████ Cooney Ex. 6  at 527 ("██████████████████████

3  ████████████████████████████████████"); WD Dep. at 44:18-45:24, 58:16-

4  60:1, 64:4-65:6. At the same time, TWG wanted the package to communicate to consumers that,

5  while this was a new flavor-forward wine, it was offered by FRANZIA, the world's most popular

6  wine brand. WD Dep. at 44:18-45:24 ("█████████████████████████████████████████

7  ███████████████████████████████████████████████████████████████

8  ████████████████████████"); Cooney Ex. 7 at 592 (████████████████████████████

9  █████████████████████████████████).

Among many alternatives that were considered, the package that TWG ultimately selected

for its Bold Blends Chardonnay is shown below. Cooney Decl. ¶ 20.



The Bold Blends Chardonnay packaging incorporates recognizable design elements that

are featured in the refreshed packaging for the other FRANZIA boxed wine products: the

FRANZIA logo is in its customary position at the top of the box while the dominant graphic

element remains the wine glass pour image. Cooney Decl. ¶ 21; WD Dep. at 44:18-45:24. The

rectangular-shaped banner bordered with "Founded By: Teresa Franzia" and the globe image are

included, confirming that FRANZIA is the "The World's Most Popular Wine." Cooney Decl. ¶

21. The "Bold Blends" identifier also was added to the banner to further identify the wine as part

of FRANZIA's flavor-forward tier of product. *Id.*

To differentiate its base tier Chardonnay and clearly communicate the distinctive buttery

flavor and aroma profile associated with its malolactic fermented wine, TWG included the

descriptive phrase "Rich & Buttery"—which appears in a translucent, white font overlaid on the wine pour image. Cooney Decl. ¶ 22; Cooney Dep. 46:7-17, 103:7-104:17. The descriptor was included on the box in a considerable font size to immediately alert consumers that the Bold Blends Chardonnay ███████████████████████████ Cooney Ex. 6 at 528 ("█ ███████████████████████████████████████████████████████████"). The flavor descriptor is ███████████████████████████████ ███████ of the taste delivered by the wine. Cooney Ex. 5. The overall effect of the package design is to identify the wine as part of the FRANZIA brand, with all of its heritage, while communicating to consumers that the Bold Blends Chardonnay is new and different from FRANZIA base tier Chardonnay.

The FRANZIA Bold Blends Chardonnay launched in April 2019. Dubiel Dep. 128:20-129:1. The product is offered at the suggested retail price $14.99 to $17.99. Cooney Decl. ¶ 4. Consumer feedback has confirmed that TWG was sensible in attempting to distinguish FRANZIA Bold Blends Chardonnay from the base tier Chardonnay. Cooney Decl. ¶ 23. Despite TWG's efforts, some TWG customers have █████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████ *See e.g.,* Cooney Ex. 8 (█████████████████████████████ ██████████████████████████████████ ████████████████████████████████████ ██████████████████████████████████████████████ █████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████ ██████████████████").

**C.    JaM Uses the BUTTER Mark for its Buttery Chardonnay.**

JaM's BUTTER wine ██████████████████████████████████ ██████████████████████████████████████ ██████████████████████████████████████

1   ████████████████████████████████ Truchard Dep. 23:21-24:22, 25:24-26:3, 43:22-

2   44:11, 47:11-23. █████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████ Truchard Dep. 40:16-21, 43:2-12, 44:7-16.

5   ████████████████████████████████████████████████████████████████████████

6   Truchard Dep. 52:20-25, 54:8-16, 55:25-56:21.[2] ████████████████████████████████

7   ███████████████████████████████████████████████████

8   ███████████████████████ Truchard Dep. 55:8-13, 57:6-8. The ensuing U.S. trademark

9   registration Reg. No. 3,999,253 is the basis for JaM's claims in this case. Manes Ex. 23.

10  ███████████████████████████████████████████████████████

11  ███████████████████████████████████████████████████ Manes Ex. 6

12  (emphasis added); *see also* Manes Ex. 24, Ex. 25 at 10018, Ex. 52 at 012861; Truchard Dep.

13  71:19-25. █████████████████████████████████████████████

14  █████████████ Truchard Dep. 72:23-73:1, 155:17-25 (████████████████████████████

15  ████████████████), 156:2-12 (█████████████████████████████

16  ████████████████████████████████████████████████████

17  ██████████████████████); 135:16-20 (██████████████████████████████████████);

18  Manes Ex. 56 at 115:14-116:2. █████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████████.

21  Truchard Dep. 100:14-101:4; 166:6-10, 101:25-102:2; Manes Ex. 26 at 178, Ex. 27 at 466-68, Ex.

22  56 at 110:2-113:2, 113:22-115:13, 117:4-7, 117:12-18, 123:20-124:10.

23      JaM's BUTTER wine is a premium wine and is alleged to have (████████████████

24  ████████████████████████) significant success and growth, as did other buttery Chardonnays.

25  Cooney Ex. 2 at 582-83. BUTTER wine is offered primarily in a 750 ml bottle and has a

26  suggested retail price of $15.99. Manes Ex. 54 at 10040 and Ex. 55. BUTTER wine, accordingly,

27  _____

[2] JaM had introduced a JaM wine (to stand for John and Michelle Truchard) and ████████████.

28  Truchard Dep. 53:14-54:16.

is approximately seven times as expensive by volume as FRANZIA wines. When doing

competitive research, JaM ████████████████████████████████████████

████████████████████████████ Truchard Dep. 136:19-137:5.

### D.    Many Third Parties Use BUTTER-formative Terms or Marks for Wine.

Unsurprisingly, many third parties use the terms "butter" and "buttery" in connection with

wine, either in branding or to indicate a buttery flavor. Manes Exs. 7, 8, 10, 11, 13, 17, 19, 28-33,

38 (ROG No. 11), 53; *see* Manes Exs. 34-37. A few examples are shown below:



█████████████████████████████████████████████████████

████████████ Manes Ex. 38 (ROG Nos. 11-12). ███████████████████

████████████████████████████████████████████████████████

██████ *Id.*; Truchard Dep. 178:17-180:21; Manes Exs. 39 and 40. JaM took an extension to oppose

a "BUTTERY" mark, but ████████████████████████ Truchard Dep. 185:8-13, 186:16-20;

Manes Exs. 41 and 42.

After the validity of its mark could no longer be challenged as "descriptive,"[3] JaM has tried

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[3] JaM's BUTTER mark is now "incontestable" which means that there are limited grounds on which the validity (though not the scope) can be challenged. 15 U.S.C. §1065; *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985).

1   ███████████████████████████████████████ Manes Ex. 43. In another TWG case, JaM

2   challenged TWG's CUPCAKE Butterkissed Chardonnay. ████████████████████████

3   ███████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████. Manes Ex. 44

5   at §1(b).

6          In other cases, JaM has ████████████████████████████████████████

7   ████████████████████████████ Manes Exs. 45, 46, and 47. In return, JaM has

8   ███████████████████████████████████████████████████████

9   ███████████████ *Id.* ████████████████████████████████

10  ███████████████████████████████ Manes Exs. 45 and 47. These "licenses,"

11  accordingly, are not bona fide commercial licenses in any conventional sense. ███████████

12  ███████████████████████████████████████████████████████████████

13  ███████████████████████████████████████████████████

14  ██████████. Manes Ex. 45 at 224, Ex. 46 at §1(g) & (j), Ex. 47 at § 1(b), 2(b), 3(c); Truchard

15  Dep. 204:4-205:2. ███████████████████████████████████████████

16  ███████████████████████████████████████████████████

17  ████████████ Manes Ex. 45 at §2(e), Ex. 46 at § 1(g), Ex. 47 at § 3(c). The result is that no

18  changes have occurred in the market as a result of JaM's prolific litigation strategy. BUTTER-

19  formative designations continue to exist and are perceived by consumers as originating from

20  different producers, exactly as they were before JaM's challenges.

21          The sales of these third party wines are substantial. For example, in 2019, BUTTERNUT,

22  BREAD & BUTTER, and CUPCAKE Butterkissed wine sold ████████████████████████

23  ███████████████████████████ Cooney Ex. 9 at 17906.[4] JaM's ████████████ wines also

24  add to the total of buttery Chardonnay wines in the market. Consumers, accordingly, are used to

25  seeing BUTTER-formative marks, not to mention flavor descriptions on Chardonnay wines and

26  are not likely to assign any particular source assumptions to them—at least unless other formative

27  _____

28  [4] This data ████████████████████████████████████████████████████████

    ████████████████████████████ Truchard Dep. 239:18-240:14.

1    elements are included like Butter[nut] or [kissed], or distinctive labeling like JaM's highly stylized

2    font and jumbled letters is used.

### III.    THE APPLICABLE LAW REQUIRES SUMMARY JUDGMENT

#### A.    The Summary Judgment Standard

5        Summary judgment is proper if "the movant shows that there is no genuine dispute as to

6    any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

7    The moving party is not required to negate or disprove matters on which its opponent bears the

8    burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 319 (1986). As to such matters, the

9    moving party's burden is met simply by "'showing'—that is, pointing out to the district court—

10   that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden

11   then shifts to the nonmoving party to demonstrate "specific facts showing that there is a genuine

12   issue for trial." *Id.* at 324. "[T]he mere existence of *some* alleged factual dispute…will not defeat

13   an otherwise properly supported motion for summary judgment; the requirement is that there be

14   no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

15   (emphasis in original). "Only disputes over facts that might affect the outcome of the

16   [litigation]…will properly preclude the entry of summary judgment." *Id.* at 248.

17       Although trademark cases often involve mixed questions of law and fact, they are decided

18   as a matter of law when there is an absence of support for essential elements of the claims. *Multi*

19   *Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 935-36 (9th Cir. 2015) (affirming summary

20   judgment where "undisputed evidence shows that confusion on the part of the inquiring buyer is

21   not at all likely"); *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)

22   (affirming summary judgment as "[a]pplication of the *Sleekcraft* factors…does not raise a material

23   issue of fact regarding actual confusion); *Packman v. Chicago Tribune, Co.*, 267 F.3d 628, 641

24   (7th Cir. 2001) (affirming summary judgment on fair use of the phrase "The Joy of Six"); *Bell v.*

25   *Harley Davidson Motor Co.*, 539 F. Supp. 2d 1249, 1262 (S.D. Cal. 2008) (granting summary

26   judgment on fair use of the phrase "Ride Hard").

27       As these cases recognize, it is important to ensure that litigation does not become a

28   competitive tool when speculation and rhetoric about font size is all that can be offered to support

a claim. *Cf. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986)

("mistaken inferences in cases such as this one are especially costly, because they chill the very

conduct the antitrust laws are designed to protect").

### B.   TWG is Entitled to Summary Judgment Because, as a Matter of Law, There is No Likelihood of Confusion.

JaM's trademark infringement claims and state law unfair competition claims all fail

because the undisputed facts show there is no likelihood of confusion. *See Cleary v. News Corp.,*

30 F.3d 1255, 1262-63 (9th Cir. 1994) ("state common law claims of unfair competition and

actions pursuant to [] § 17200 are 'substantially congruent' to claims made under the Lanham

Act."). [5]

The Ninth Circuit considers eight factors in assessing likelihood of confusion: (1) the

strength of plaintiff's mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of

actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to

be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of

expansion of the product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). The

*Sleekcraft* factors, however, are not exhaustive or exclusive as "[o]ther variables may come into

play depending on the particular facts presented." *Id.* at 348 n.11. "[T]he relative importance of

each individual factor will be case specific." *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073,

1080 (9th Cir. 2005) (quotation marks and citation omitted). In essence, "[t]he test for likelihood

of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be

confused as to the origin of the good or service bearing one of the marks." *Id. (*citing *Dreamwerks*

*Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998)). Where an examination of

some of the factors demonstrates that the relevant consumers are not likely to be confused, the

---

[5] The claims include (1) federal trademark infringement; (2) federal unfair competition; (3) dissemination of false and misleading statements under California law; (4) California trademark dilution; and (5) California common law claims for trademark infringement and unfair competition. Dkt. 1. All but the dilution claim explicitly depend on consumer confusion. *See Cleary,* 30 F.3d at 1263; *ADG Concerns, Inc. v. Tsalevich LLC*, 2018 WL 4241967, at *3 (N.D. Cal. Aug. 31, 2018). In addition to other missing elements, the dilution claim depends on the BUTTER mark being "famous" in a geographic market in California, for which there is no evidence offered.

court should grant summary judgment in favor of the defendant without need to examine the other factors. *Multi Time Mach.*, 804 F.3d at 937-38 (granting summary judgment after examining two factors that showed confusion was unlikely).

Here, the relevant *Sleekcraft* factors show that there is no basis for a jury to infer a likelihood of confusion.

### 1.    Survey Evidence Shows That Confusion is Unlikely.

Actual confusion may be shown directly by instances of actual confusion or circumstantially through survey evidence, or by both. *See Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 902 (9th Cir. 2002). JaM readily admits ██████████████████████████ ████████████████████████ *See* Manes Ex. 38 (ROG No. 12); Dkt. 26 at ¶ 4; Dkt. 1 at ¶ 22.

JaM has not conducted any confusion survey. On the other hand, TWG has engaged an independent expert to conduct a survey to ascertain whether or not consumers were likely to be confused by TWG's use of "Rich & Buttery" description. TWG retained Dr. David Neal, an Executive in Residence at Duke University and the Managing Partner of a research consulting firm specializing in the analysis of human decision making and consumer behavior. Manes Ex. 49 at 1. Mr. Neal conducted a "*Squirt*" survey[6] asking non-suggestive questions of 307 U.S. respondents (actual or likely boxed wine consumers aged 21 and older). *Id.* at 4. The survey asked respondents to look at and consider JaM's BUTTER wine, as they would if they were purchasing it, and then to look at and consider several other Chardonnay wines. *Id.* at 5. The array of Chardonnay wines shown to the respondents included the FRANZIA Rich & Buttery Chardonnay and "control" products to guard against survey responses that are not attributable to trademark confusion. The

---

[6] As Dr. Neal reports, the *Squirt* format is conservative because it pre-conditions respondents to think about BUTTER wine, immediately before they view an array that includes in this case, FRANZIA Bold Blends Chardonnay. Respondents are then asked about potential associations between the wines. In another typical survey format, an *Eveready* survey, respondents would not be shown the BUTTER wine and only prompted by the test wine, after which they would be asked, in effect, "who puts out this wine?" and "who sponsors or authorizes this wine to be put out?" With the FRANZIA branding so prominent, the *Eveready* format would essentially be a reading exercise—as is true in the marketplace. The *Squirt* format, accordingly, is more favorable to JaM's contentions.  Manes Ex. 49 at 5 n.8.

controls included BLACK BOX Chardonnay, BUTTERNUT Chardonnay, VELLA Chardonnay, and RICH & CREAMY Chardonnay. *Id.* at 5, 18-19.

The BUTTERNUT Chardonnay, which has no connection to JaM, was reported most often as originating or being sponsored by the producer of BUTTER wine, followed by RICH & CREAMY Chardonnay. *Id.* at 6. The FRANZIA Bold Blends Chardonnay was reported third most often by respondents. *Id.* These results demonstrate that there is no basis for finding any likelihood of confusion in this case as every survey method requires that the "control" responses be deducted from the "test" responses. The results of Dr. Neal's survey, accordingly, reflect "negative confusion." *Id.* at 6-7.[7]

JaM's failure to conduct its own survey warrants a presumption that the results would have been unfavorable. *Instant Media, Inc. v. Microsoft Corp.*, No. C 07-02639 SBA, 2007 WL 2318948, at *15 (N.D. Cal. Aug. 13, 2007) ("[plaintiff's] failure to submit its own survey may support an inference that [plaintiff] predicted that the results of such a survey would be unfavorable."); *Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, No. 14-cv-04853-PSG, 2015 WL 9266497, at *4 (N.D. Cal. Dec. 18, 2015) ("a trier of fact may be entitled to presume that one party's failure to conduct a survey concedes that the survey evidence would be unfavorable to it."). TWG, on the other hand, has presented credible, conservative survey results showing a complete lack of confusion. This factor unequivocally supports TWG's motion.

### 2. JaM's BUTTER Mark is Weak and Entitled to a Narrow Scope of Protection.

An important confusion factor focuses on the strength of JaM's BUTTER mark. A mark is considered strong if it is conceptually distinctive, such as a coined term that arbitrarily becomes associated with products from a single source, or if the mark has acquired distinctiveness through use, advertising, and sales so that associations between the mark and a single source are cemented by consumers' familiarity with a mark. *Instant Media*, 2007 WL 2318948, *12.

A trademark's conceptual strength is typically evaluated according to four categories of

---

[7] JaM, unsurprisingly, has hired an expert to rebut Dr. Neal's report. The Court will, accordingly, likely receive a challenge of some sort to this evidence. At the same time, even in rebuttal, JaM has produced no empirical (or anecdotal) evidence of actual or likely confusion.

distinctiveness, ranging from weakest to strongest: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful. *Instant Media*, 2007 WL 2318948, *12. Given the well-established convention of using "butter" as a root term to describe the flavor of a wine, the BUTTER mark is at most descriptive or at worst generic.[8] A descriptive mark "describes a characteristic or ingredient of an article," while a suggestive mark "suggests rather than describes an ingredient, quality or characteristic." *Park 'N Fly*, 718 F.2d at 329. A mark is suggestive when a consumer must use imagination or multistage reasoning to obtain information about the product. 2 McCarthy on Trademarks and Unfair Competition § 11:19 (5th ed.).

Here, the evidence confirms that JaM's BUTTER mark immediately communicates— without any required imagination—the taste of the wine. *See* Manes Ex. 49 at 10348 (████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████) (emphasis added),

Manes Ex. 6 at 1465 (██████████████████████████████).

The BUTTER mark also is weak due to the presence of a "crowded field" of third party users of similar marks on similar goods. *Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1034 (N.D. Cal. 2003) (holding that in the internet service industry, marks bearing the word "halo" exist in a crowded field because there are other marks using the same word). "In a crowded field of similar marks, each member of the crowd is relatively weak in its ability to prevent others in the crowd." *One Indus., LLC v. Jim O'Neal Dist., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009) (internal quotation marks omitted). "[T]hat the marketplace is replete with products using a particular trademarked word indicates not only the difficulty in avoiding its use but also, and directly, the likelihood that consumers will *not* be confused by its use." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002) (emphasis in original).

TWG has identified numerous examples of third-party use of BUTTER-formative marks

---

[8] Although an incontestable trademark registration cannot be canceled on grounds of descriptiveness, a court can and should consider descriptiveness when determining the strength of the mark in a likelihood of confusion inquiry. *Hero Nutritionals LLC v. Nutraceutical Corp.*, No. SACV 11-1195 AG (MLGx), 2013 WL 4480674, *4 (C.D. Cal. Aug. 16, 2013).

with wine. *See, e.g.* Manes Exs. 7, 8, 10, 11, 17, 29, 30-32, 38 (ROG No. 11). JaM has attempted

to ████████████████████████████████████████████████████████. But,

unless JaM had taken steps to create a family of marks that consumers will understand emanate

from a single source—████████████████—its enforcement strategy does nothing to

strengthen its BUTTER trademark. *See TPI Holdings, Inc. v. Trailertrader.com, LLC*, 126

U.S.P.Q.2d 1409, *14 (T.T.A.B. 2018) (rejecting argument that third party uses were irrelevant

because they were subject to settlement agreements; "there is no reason to believe that consumers

would have knowledge of these agreements…[so] consumers exposed to these marks will view

them as additional, unrelated –TRADER formative marks."). Consumers still perceive these other

BUTTER-formative uses in the market and have no reason to associate these uses with JaM's

BUTTER wine—particularly given that JaM has ████████████████████

████████████████████████████████. *See* Manes Exs. 45

at §2(e); Ex. 46 at § 1(g); Ex. 47 at § 3(c); *See First Nat'l Bank of Omaha v. Autoteller Sys. Serv.*

*Corp.*, 1988 WL 252335, at *4 (T.T.A.B. Aug. 24, 1988) (rejecting validity of license agreement

in part because it "represents only a consent by [licensor] to [licensee's] continued use of the mark

[licensee] had been using").

  JaM relies entirely on the commercial success of its product to show "strength" of its mark.

This commercial success, however, is attributable to multiple factors; the product is "on trend"

with other buttery Chardonnays that have shown growth. The product is intended as a premium

Chardonnay with a buttery taste profile that ████████████████. Truchard Dep.

47:11-23. The mark itself, and every wine JaM puts out, is differentiated by the distinctive,

jumbled font that is used. Even in ads for BUTTER wine, JaM uses its distinctive rendition. There

is no empirical evidence that the commercial success is due to recognition of the BUTTER brand,

apart from these distinctive elements. Accordingly, this factor clearly lands in favor of TWG.

### 3. TWG's "Rich & Buttery" Phrase is Not Similar to JaM's BUTTER Mark.

  The similarity of the marks is often another important factor in determining likelihood of

confusion. In assessing similarity, courts consider sight, sound, and meaning. *Sleekcraft*, 599 F.2d

1    at 351. Marks must be considered in their entirety and as they appear in the marketplace. *Kern v.*

2    *Mindsource, Inc.*, 225 F.3d 663 (9th Cir. 2000) (similarity must be considered in light of the way

3    the marks are encountered in the marketplace); *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d

4    1378, 1383-84 (9th Cir. 1987) (examining the "total effect of the defendant's product and package

5    on the eye and mind of an ordinary purchaser."). "The proper test for likelihood of confusion is

6    not whether consumers would be confused in a side-by-side comparison of the products, but

7    whether confusion is likely when a consumer, familiar with the one party's mark, is presented with

8    the other party's goods alone." *E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp.

9    457, 466 (N.D. Cal. 1991) (quoting *Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L.*,

10   673 F. Supp. 1238, 1248 (S.D.N.Y. 1987)).

11          Under this standard, TWG's use of "Rich & Buttery" is not remotely similar to JaM's

12   BUTTER mark. Unlike JaM (which only has the BUTTER brand on its label), TWG uses the

13   FRANZIA brand prominently to identify its buttery Chardonnay. TWG does not use the noun

14   "butter" but rather the adjective "buttery"—which JaM ███████████████████████

15   ██████████ Truchard Dep. 100:14-101:4; Manes Ex. 26 at 178. TWG is not using "buttery"

16   alone but rather with a prior, second adjective "rich"—highlighting the descriptive meaning of the

17   entire phrase. The descriptive meaning is reinforced by the tasting note that also appears on the

18   box:  "The richest, most buttery Chardonnay we've ever put in a box." The "Bold Blends" tier

19   name further communicates that the "Rich & Buttery" phrase is describing a flavor-forward wine.

20          The presentation of the terms as used on the parties' respective packaging nullifies any

21   superficial similarity between them. *Packman*, 267 F.3d at 644; *Nabisco, Inc. v. Warner-Lambert*

22   *Co.*, 220 F.3d 43, 47 (2d. Cir. 2000) ("Our inquiry does not end with a comparison of the marks

23   themselves. Rather, in determining whether two marks are confusingly similar, we must 'appraise

24   the overall impression created by…the context in which they are found and consider the totality of

25   factors that could cause confusion among prospective purchasers'"); *Streetwise Maps, Inc. v.*

26   *VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998) ("In determining whether the two marks are

27   similar, and therefore likely to provoke confusion among prospective purchasers, courts appraise

28   'the overall impression created by the logos and the context in which they are found and consider

the totality of factors that could cause confusion among prospective purchasers.'") (quoting
*Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1993)).

Any consumer viewing the parties' products will immediately recognize the obvious
differences in the parties' products and packaging. The first is that TWG uses the "Rich &
Buttery" phrase on a box of wine (at the equivalent of a little more than $2 per 750 ml) while
JaM's BUTTER wine is typically offered in a 750 ml glass bottle with a suggested retail price of
about $16. Manes Ex. 54 at 10040 and Ex. 55. Apart from these drastic differences, the display of
the terms on the parties' packaging is visually dissimilar, including in style and typeface. The
"Rich & Buttery" descriptor on TWG's product is displayed in a translucent, white, sans serif font
with each letter appearing in the same size. JaM, on the other hand, uses the BUTTER mark in a
highly stylized bold, black serif font with each letter appearing in a different size in a "jumbled"
format that resembles "alphabet soup." Truchard Dep. 170:3-9. No other images or words appear
on the BUTTER wine label except for the varietal, year, and appellation.

TWG's packaging, on the other hand, includes multiple other verbal and design cues—
many of which are associated exclusively with the FRANZIA brand. The "buttery" descriptor
about which JaM complains appears directly below the well-known FRANZIA trademark and
logo—which is prominently placed at the top center of the box—and is paired with "rich," another
descriptor. The "Rich & Buttery" phrase is superimposed in "ghosted" font on an image of wine
glass pour—identical to the wine pour that appears on all of FRANZIA white wine boxes. The
varietal is identified below the "Rich & Buttery" phrase in a banner along with "The World's Most
Popular Wine" designation and the "Founded by Teresa Franzia" language. In the context of these
uses, the presence of these FRANZIA branding design elements eliminates any vestige of possible
confusion. *Cf. Nabisco*, 220 F.3d at 46 (finding that use of a well-known house brand "reduce[d],
if not altogether eliminate[d]," likelihood of confusion). Taken as a whole, the parties' uses are
dramatically different and no reasonably prudent consumer is likely to be confused.

### 4.   The Parties' Products Are In Different Wine Categories.

The fact that two goods fall within the same general field of products "does not mean that
the two products are sufficiently similar to create a likelihood of confusion." *See Network*

*Automation, Inc. v. Hewlett-Packard Co.*, No. CV 08 4675-JFW (RZx), 2009 WL 5908719, at *9 (C.D. Cal. Sept. 14, 2009). If the goods are not "closely related in the minds of consumers," this factor favors the defendant. *Id.*

Here, although both parties offer wine, no reasonably prudent consumer is likely to conclude that the parties' goods are closely related given the way the goods are presented. JaM offers a premium wine product in a 750 ml glass bottle that has a suggested retail price of approximately $16 and often retails for about ████. Manes Ex. 54 at 10040 and Ex. 55; Truchard Dep. 136:19-22; 139:4-140:9. TWG's FRANZIA Bold Blends Chardonnay, on the other hand, offers a value priced boxed wine whose suggested retail price equivalence is approximately $2 per 750 ml bottle. *See* Dubiel Dep. 188:5-9. Cooney Decl. ¶ 4. Mr. Truchard testified at his deposition that ██████████████████████████████████████ ████████████████████████. Truchard Dep. 136:19-137:21. In contrast, the FRANZIA brand ████████████████████. Hoefs Dep. 67:6-13; Cooney Ex. 4 at 978. These differences are consistently reinforced in retail stores because the FRANZIA Bold Blends Chardonnay will be displayed with other FRANZIA branded wines and other boxed wines. WD Dep. at 58:16-59:21; Cooney Decl. ¶ 4. Because the parties' products fall in different wine categories, this factor also clearly supports ruling in TWG's favor on this motion.

### 5.    There is No Likely Expansion of TWG's FRANZIA Wine or JaM's Wines Into the Others Category

When there is a "a strong possibility that either party may expand his business to compete with the other," this factor weighs in favor of finding "that the present use is infringing." *Sleekcraft*, 599 F.3d at 354 (internal quotations omitted). The court must determine whether the allegedly infringing mark is "hindering the plaintiff's expansion plans." *Pinterest, Inc. v. Pintrips, Inc.*, 140 F. Supp. 3d 997, 1022 (N.D. Cal. 2015) (citing *Surfvivor*, 406 F.3d at 634). The plaintiff "must offer proof beyond mere speculation or generalized expansion goals," expressed interest is not sufficient but rather concrete evidence is necessary. *Pinterest,* 140 F. Supp. 3d at 1022*.* JaM has gone in the other direction and has ████████████████████████████ ████████████████████████. Truchard Dep. 224:1-13. There is

1   no evidence that could tilt this factor in JaM's favor.

2       **6.       TWG's Intention Was to Clearly and Overtly Identify a Flavor of**
3       **Wine, Not to Appropriate JaM's Trademark**

4       A defendant's intent to confuse constitutes probative evidence of likely confusion. *Playboy*

5   *Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004). Mere knowledge

6   of plaintiff's descriptive trademark, however, does not establish bad faith. *Marketquest Grp., Inc.*

7   *v. BIC Corp.*, 862 F.3d 927, 937 (9th Cir. 2017) ("An inference of bad faith does not arise from

8   mere knowledge of a mark when the [accused] use is otherwise objectively fair…"). There is no

9   evidence demonstrating that TWG had any malicious intent when selecting the "Rich & Buttery"

10  phrase. TWG adopted the descriptive phrase on its FRANZIA packaging to signal to consumers

11  that it was offering a flavor-first FRANZIA wine that was different from its base tier Chardonnay.

12  The only evidence, and there is a lot of it, shows that TWG was interested in competing for

13  consumers interested in buttery Chardonnays, a growth segment in the wine industry, and the need

14  to clearly announce to consumers that this new wine was different from its base tier Chardonnay.

15      The absence of any nefarious intent to piggy-back on JaM's purported goodwill is also

16  demonstrated by TWG's deliberate retention of the traditional and recognizable FRANZIA

17  branding design elements. *See* Cooney Ex. 7 at 591-92. In designing the package, TWG naturally

18  wanted the well-known FRANZIA trademark to "thrive" and, of course, to capitalize on the new

19  product's association with the most popular wine in the world. It would defy commercial common

20  sense for TWG to dilute this message by associating the new wine with a successful but niche

21  winery. By featuring the traditional and iconic FRANZIA branding on its packaging, TWG

22  undermines any argument that it intended such an association. *See Bell*, 539 F. Supp. 2d at 1259-

23  60 (Harley Davidson's inclusion of its name and other marks establish an intent not to confuse).

24      **7.       In Summary, There is No Likelihood of Confusion.**

25      Taken together, the undisputed evidence on all relevant factors demonstrates that there is

26  no basis for any factfinder to infer a likelihood of confusion. The weakness of JaM's BUTTER

27  mark coupled with the parties' distinguishable uses, especially in the context of the actual

28  marketplace, makes consumer confusion highly unlikely. The absence of likely confusion is

corroborated by TWG's survey and the sound commercial reasons underlying TWG's decision to adopt the "Rich & Buttery" phrase to describe its products, among a sea of other buttery Chardonnays. Without any basis for claiming likely confusion, JaM cannot overcome its burden to defeat this motion.

### C.    TWG is Entitled to Summary Judgment Based on its Fair Use of "Rich & Buttery."

The Lanham Act provides an absolute defense to an infringement claim if the defendant's "use of the name [or] term…is a use, otherwise than as a mark…which is descriptive of and used fairly and in good faith only to describe…the goods or services of [the] party…" 15 U.S.C. § 1115(b)(4); *see Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) ("Under the common law classic fair use defense…[a] junior user is always entitled to use a descriptive term in good faith in its primary, descriptive sense other than as a trademark.") (*quoting* 2 McCarthy on Trademarks and Unfair Competition § 11:45 (4th ed. 2001)). There is "no indication that [the Lanham Act] was meant to deprive commercial speakers of the ordinary utility of descriptive words." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004). Rather, "[b]y choosing a descriptive term, the trademark owner must live with the result that everyone else in the marketplace remains free to use the term in its original 'primary' or descriptive sense." McCarthy § 11:45. "If any confusion results, that is the risk [JaM] accepted when it decided to identify its product with a mark that uses a well known descriptive phrase." *KP Permanent*, 543 U.S. at 122 (quoting *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2nd Cir. 1997)).[9]

A fair use: (1) employs the allegedly infringing designation for purposes other than as a trademark, (2) deploys the term to describe characteristics of its goods, and (3) adopts the term in good faith. 15 U.S.C. § 1115(b)(4); *Cairns*, 292 F.3d at 1151. The fair use defense stems from the

---

[9] Fair use is also a defense to California dilution cases. Cal. Bus. & Prof. Code § 1427(b)(1) (California statute exempts from claims of dilution "any fair use, including a…descriptive fair use…of a famous mark by another person other than as a designation of course for the person's own goods or services"); 4 McCarthy on Trademarks and Unfair Competition § 24:122 (5th ed.) ("[A] non-trademark use does not and cannot dilute by blurring.…This was the rule under the 1996 FTDA and is still the rule in the 2006 TDRA. It is also the rule under state antidilution statutes.").

1  "undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term

2  simply by grabbing it first." *KP Permanent*, 542 U.S. at 122. In establishing fair use, TWG is not

3  required to "negate confusion" and some likely confusion—which has not been shown here—can

4  coexist with a fair use. *Id.* at 118.

5      The undisputed evidence demonstrates that TWG's use of the phrase "Rich & Buttery"

6  constitutes fair use.

7              **1.    TWG is Not Using the Words "Rich & Buttery" as a Trademark.**

8      Use of a word or phrase is considered trademark use when it used to designate the source

9  of a product or service. 15 U.S.C. § 1127. Here, TWG's use of "Rich & Buttery" is a "pure" use of

10 a descriptive term whose only purpose is to tell consumers what the wine tastes like. TWG relies

11 on its well-known FRANZIA trademark—which appears on the packaging consistently across the

12 entire FRANZIA boxed wine portfolio—to designate the source of its product. No evidence

13 suggests that consumers will forsake reliance on branding they are accustomed to in favor of

14 descriptive textures and flavors that appear on the package in translucent font. *See Dessert Beauty,*

15 *Inc. v. Fox*, 568 F. Supp. 2d 416, 424 (S.D.N.Y. 2008), *aff'd*, 329 F. App'x 333 (2d Cir. 2009)

16 ("Words on a product's packaging generally do not serve as a trademark where there is also a

17 conspicuously visible trademark that clearly serves that function."); *Packman*, 267 F.3d at 639

18 (noting that in finding fair use, the newspaper's "joy of six" t-shirt "plainly indicat[ed] the Tribune

19 as the source"). Because TWG did not use the phrase "Rich and Buttery" to identify the source or

20 origin of the product, TWG's use was "otherwise than as a [trade]mark." 15 U.S.C. § 1115(b)(4).

21     JaM claims, without any other evidence, that the use of large capital letters ordains "Rich

22 and Buttery" as a trademark. But font size and capitalization are not enough to establish trademark

23 use. *See e.g. Schmid Labs. V. Youngs Drug Prods. Corp.*, 482 F. Supp. 14, 21 (D.N.J. 1979)

24 (rejecting that mere capitalization of RIBBED establishes trademark use even when, "as here, the

25 lettering is larger than that used for [o]ther capitalized words on the package."). Mere emphasis of

26 a descriptive mark does not show that the mark is being used as a trademark. *Eli Lilly & Co. v.*

27 *Revlon, Inc.*, 577 F. Supp. 477, 468 (S.D.N.Y. 1983) ("Emphasis of a descriptive term on

28 packaging does not show that the term is being used as a trademark."); *see also Packman*, 267

F.3d at 641 (holding that use of THE JOY OF SIX was fair use even though it was printed in large font as a headline on t-shirts and posters).

TWG has never claimed that "Rich & Buttery" is a trademark. It has never tried to obtain a trademark registration for the term "Rich & Buttery" and it has not used the "TM" symbol in connection with the phrase. *Dessert Beauty*, 568 F. Supp. 2d at 424 (finding the absence of TM symbol highlighted the non-trademark use of the phrase at issue). Rather, the evidence shows that TWG chose the phrase "Rich & Buttery" as a flavor descriptor while it relied on the FRANZIA logo to designate source. Cooney Ex. 5 (the "descriptors should truly be descriptors, not part of the formal name"); *see also* Manes Ex. 50 (COLA identifying brand name as "Franzia" with no fanciful name). TWG wanted a bold package design to reinforce that the Bold Blends tier was different from the base tier line of FRANZIA wines and to inform consumers that they should expect a significantly different "rich and buttery" flavor from the new FRANZIA Bold Blends Chardonnay. Cooney Ex. 6 at 528 (p███████████████████████████████████████████████████████████████████████████████). Prominently featuring a descriptive term on packaging does not—without further evidence—make it a trademark. *Schmid Labs.*, 482 F. Supp. at 20-21 ("[W]hatever attention is drawn to 'RIBBED' serves only to inform the prospective purchaser [w]hat type of condom is contained within, not whose product it is…It denotes the difference between this particular type of condom and…several others…").

JaM has offered no evidence, empirical or otherwise, to suggest that consumers are ignoring FRANZIA branding and, instead, perceiving "Rich and Buttery" as a source identifier. JaM's claim to the contrary is based on nothing but reflexive rhetoric that a descriptor is a "trademark" unless it is so subtly displayed on the package that consumers may miss it.

### 2. TWG Chose Known and Accessible Descriptive Words to Convey the Flavor Profile to its Chardonnay.

JaM has likewise offered no witnesses, experts, or documents that contradict its own admissions that "buttery" is a well–known flavor descriptor for Chardonnay. The tasting notes on the side of the box reinforce that it is a buttery chardonnay. The word "rich" is an appropriate term to describe a flavor-forward wine. According to the dictionary, a "rich" taste is "strong in a

pleasing or attractive way." Manes Ex. 51 at 619 (example given in the dictionary listing is "The wine has a rich aromatic flavour"). Numerous third parties in the wine industry, including JaM, use the term "rich" to describe the texture and flavor of their wines. *See e.g.* Truchard Dep. 84:1-6; 100:14-101:4; 166:6-10, 101:25-102:2, 135:16-20; 156:2-12; Manes Exs. 6, 7, 11, 13-15.

Likewise, the term "buttery" has a concrete descriptive meaning when used in connection with wine. Truchard Dep. 100:14-101:4, 166:6-10, 101:25-102:2, 135:16-20, 146:24-147:8; Manes Exs. 20-22, 56 at 118:14-119:2, 133:24-134:10. A wine with buttery characteristics typically carries flavors reminiscent of melted butter, and a texture that is often cream-like with a soft, smooth finish. Cooney Decl. ¶ 14. This Court, in another of JaM's lawsuits, already has acknowledged that "'buttery' is an adjective frequently used in describing a particular type of chardonnay." *Jam Cellars, Inc. v. Vintage Wine Estates, Inc.*, No. 17-01133-CRB, 2017 WL 2535864, at *1 n.1 (N.D. Cal. June 12, 2017).

JaM concedes ███████████████████████████████████████ ███████████████████████ Truchard Dep. 72:23-73:1, 100:14-101:4, 101:25-102:2, 135:16-20, 155:17-25, 156:2-12; Manes Ex. 26 at 178, Ex. 27 at 466-68., Ex. 56 at 110:2-113:2, 113:22-115:13, 117:4-7, 117:12-18, 123:20-124:10. JaM itself has ██████████████████ ███████—meaning that it too recognizes that the word accurately and efficiently describes wine. Manes Exs. 6, 24; Truchard Dep. 71:19-25. JaM cannot overcome these concessions to assert a monopoly over a common descriptor and prevent TWG from fairly and accurately describing its wine. Doing so would "deprive commercial speakers of the ordinary utility of descriptive words"—which the Supreme Court specifically prohibited. *KP Permanent*, 543 U.S. at 122.

### 3. TWG Uses the Words "Rich & Buttery" Fairly and in Good Faith.

The third factor of the fair use defense assesses whether the defendant exercised "good faith." 15 U.S.C. § 1115(b)(4). The "good faith" factor involves the same issue as the intent factor in a likelihood-of-confusion analysis. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F. 3d 1025, 1043 (9th Cir. 2010). "[T]he standard for good faith for fair use…asks whether the alleged infringer intended to trade on the good will of the trademark owner by creating confusion as to the source of the goods or services." *Int'l Stamp Art, Inc. v. U.S. Postal*

*Serv.*, 456 F.3d 1270, 1274 (11th Cr. 2006) (citing cases from five circuits, including 9th Cir.).

There is no evidence remotely suggesting that TWG adopted the flavor descriptions in bad faith. To the contrary, TWG prominently displayed its well-known FRANZIA brand on its package, along with the "Rich & Buttery" wine descriptor. *See Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d at 30 (affirming summary judgment because "non-trademark use of the challenged phrase and the defendants' good faith are…evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks"). There is a particularly sound commercial reason to emphatically use descriptors in the wine industry. The actual product package is the only vehicle by which a wine producer can assure itself that a particular product message will be communicated to consumers. ███████████████████████████████████████████████

████████████████████████████████ Cooney Decl.¶ 22. TWG selected the "Rich & Buttery" rendition on its packaging for exactly these commercially sensible reasons. TWG needed to efficiently describe the flavor profile of its new Chardonnay and ensure that consumers would know that the FRANZIA Bold Blends Chardonnay is a different product than the FRANZIA base tier Chardonnay. Cooney Ex. 6 at 528.

A wealth of evidence shows that TWG adopted the "rich" and "buttery" designations to describe flavors of a wine. Without material evidence to challenge this conclusion, there is no barrier to summary judgment. The Court may determine as a matter of law that TWG's use is fair use and that summary judgment is therefore proper on all of JaM's claims. *See Playboy Enters., Inc. v. Terri Welles, Inc.*, 78 F. Supp. 2d 1066, 1075 n.4 (S.D. Cal. 1999) (fair use analysis is identical for trademark-related claims under statutory provisions and the common law of California), *aff'd in part, rev'd on other grounds; Dr. Seuss Enters., v. L.P. ComicMix LLC*, 256 F. Supp. 3d 1099, 1113 (S.D. Cal. 2017); *e.g., Packman*, 267 F.3d at 641 (granting summary judgment on fair use of the phrase "The Joy of Six"); *Bell*, 539 F. Supp. 2d at 1262 (granting defendant's motion for summary judgment on fair use of the phrase "Ride Hard").

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant TWG's motion for summary judgment.

1    DATED:  February 5, 2020              Respectfully submitted,

2                                         KILPATRICK TOWNSEND & STOCKTON LLP

3

4                                         By: */s/Gregory S. Gilchrist*
                                             GREGORY S. GILCHRIST
5                                            SOPHY T. MANES
                                          Attorneys for Defendant/Counterclaimant
6                                         The Wine Group LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28