UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAM CELLARS, INC., <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>THE WINE GROUP LLC, <br><br>　　　　Defendant. | Case No. 19-cv-01878-HSG <br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br>Re: Dkt. No. 35, 36, 37, 42 |

Pending before the Court is Defendant's motion for summary judgment. Dkt. No. 36 ("Mot."), 38 ("Opp."), and 43 ("Reply"). The parties also filed administrative motions to seal portions of their briefs and exhibits. *See* Dkt. Nos. 35, 37, 42.[1] For the reasons noted below, the Court **DENIES** Defendant's motion for summary judgment, and the parties' administrative motions to seal.

## I.   BACKGROUND

Plaintiff JaM Cellars, Inc. ("JaM") filed suit to prevent The Wine Group LLC's ("TWG") use of "BUTTERY" to describe its FRANZIA "RICH & BUTTERY" brand. Dkt. No. 1 at ¶20. JaM produced its first BUTTER Chardonnay in 2009 and released the wine in 2010. Dkt. No. 37-6 ("Truchard Decl.") at ¶2. On July 19, 2011, the United States Patent and Trademark Office ("USPTO") granted registration of the "BUTTER" mark to JaM Cellars as U.S. Trademark Registration No. 3,999,253. Dkt. No. 36-3, Ex. 23. JaM now seeks to enforce the following mark:

---

[1] The Court finds this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 16-5.



TWG developed a "Flavor First" extension of its FRANZIA Chardonnay and Cabernet wine varietals in order to appeal to a new consumer base. Dkt. No. 35-4 ("Cooney Decl.") at ¶¶11, 13, 15.  To this end, TWG developed a new packaging design that both "fit within the existing FRANZIA base portfolio design architecture" and "instantly communicate[d] to consumers that the flavor-first Chardonnay was different from the FRANZIA base tier Chardonnay." *Id.* at ¶15.  Pictured below is the packaging that was ultimately selected:



## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations,"

*Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

**III.   ANALYSIS**

Defendant moves for summary judgment, arguing first that there is no likelihood of consumer confusion, and second that even if there were likelihood of confusion, it is entitled to a fair use defense. *See generally* Mot.

3

### A. Confusion

"To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a party 'must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'" *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)). It is a "well-established principle that because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010) (quotations and alterations omitted). Still, courts have granted summary judgment when "[t]he distribution of the *Sleekcraft* factors does not raise a material issue of fact regarding likelihood of confusion." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005); *see also Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936 (9th Cir. 2015) (affirming grant of summary judgment where "the undisputed evidence shows that confusion on the part of the inquiring buyer is not at all likely.").

To determine whether the marks are likely to confuse consumers, the Court is guided by the following eight *Sleekcraft* factors:

> (1) [T]he similarity of the marks; (2) the strength of the plaintiff's mark; (3) the proximity or relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5) evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers of the defendant's product.

*Fortune Dynamic, Inc.*, 618 F.3d at 1030 (citing *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979) *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)). These factors are "helpful guideposts . . . not a scorecard, a bean-counter, or a checklist." *Id.* at 1031.

Here, although the Court accepts that there is no evidence of actual confusion by consumers, viewing the evidence in the light most favorable to Plaintiff, material issues of fact exist regarding some of the key factors. Specifically, issues of fact with respect to at least three of the *Sleekcraft* factors weigh against summary judgment: "(1) the strength or arbitrariness of the

4

mark; (2) the relatedness (or proximity) of the parties' goods; and (3) the similarity of the marks." *See Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998) (referring to the same factors as "pivotal"); *Instant Media, Inc. v. Microsoft Corp.*, No. 07-CV-02639-SBA, 2007 WL 2318948, at *7 (N.D. Cal. Aug. 13, 2007).

### i. Strength of the Mark

"The strength of the mark is a key factor with two components: the mark's recognition in the market (*i.e.*, its commercial strength) and the mark's inherent distinctiveness (*i.e.*, its conceptual strength)." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017). The parties do not dispute the commercial strength of Plaintiff's "BUTTER" mark. Instead, Defendant argues that the mark lacks conceptual strength because it is merely descriptive of the flavor of some Chardonnays. Mot. at 14–16. "[M]arks are placed in one of five categories, ranging from weakest to strongest: generic, descriptive, suggestive, arbitrary, and fanciful," to determine conceptual strength. *Fortune Dynamic, Inc.*, 618 F.3d at 1033 (citation omitted). Plaintiff argues that its mark is at least a suggestive mark since "consumers would need to create some association in their minds between butter and wine and conclude that term is in reference to the taste of the wine or mouthfeel." Dkt. No. 37-4; *see Fortune Dynamic, Inc.*, 618 F.3d at 1033 (noting that "suggestive marks . . . require a consumer to 'use imagination or any type of multistage reasoning to understand the mark's significance' and automatically receive protection") (quoting *Zobmondo Entm't, LLC v. Falls Media, LLC,* 602 F.3d 1108, 1114 (9th Cir. 2010)).

While it may appear obvious to a wine enthusiast that "butter" is commonly used to describe a trait of Chardonnay wine, nothing in the word inherently has anything to do with wine. As Plaintiff notes, the dictionary definition of butter points to (1) "a solid emulsion of fat globules, air, and water made by churning milk or cream and used as food;" (2) "a buttery substance," defined further as "any of various fatty oils remaining nearly solid at ordinary temperatures" or "a creamy food spread;" and (3) flattery. *See* "Butter," *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/butter; *see also Fortune Dynamic, Inc.*, 618 F.3d at 1033 ("A suitable starting place for attempting to draw the line between a suggestive and a descriptive mark is the dictionary.") (internal quotations omitted). Thus, a jury could find

that the mark is most appropriately categorized as suggestive, since it requires a consumer to create an association between BUTTER and wine. A suggestive mark is considered strong, so the existence of a triable issue of material fact as to this factor similarly weighs in favor of finding a triable issue of fact as to likelihood of confusion at this stage.[2]

### ii.    Relatedness or Proximity of the Goods

"When the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected." *Sleekcraft*, 599 F.2d at 348. Defendant argues that the parties' goods here are not related because they are sold at different retail price points and in different packaging. Mot. at 18–19 (noting that a 750 ml bottle of BUTTER wine retails for about $13–15, while the RICH & BUTTERY brand's five-liter boxed wine retails at a similar price). While the two products may be offered in different packaging types, they are same type of product: Chardonnay varietal blends that exhibit a buttery flavor profile. JaM also presents evidence that when TWG was developing the RICH & BUTTERY brand, an internal document identified JaM's BUTTER wine as a brand target because it "represented [a] leader[] within the space, and it represented an opportunity." Dkt. No. 35-17, Ex. I at 58:5–14. Where even JaM saw the goods as closely related, even if the packaging type and price per milliliter may differ, a material dispute of fact exists as to the relatedness of the goods.

### iii.   Similarity of the Marks

Finally, "[s]imilarity of the marks is tested on three levels: sight, sound, and meaning. Each must be considered as they are encountered in the marketplace. Although similarity is measured by the marks as entities, similarities weigh more heavily than differences." *Sleekcraft*, 599 F.2d at 351. Defendant argues that "RICH & BUTTERY" is used merely to describe its

---

[2] The Court does agree with Defendant's argument that the mark's strength is weakened by the use of similar marks bearing the same word. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 114 (9th Cir. 2002) ("[T]hat the marketplace is replete with products using a particular trademarked word indicates not only the difficulty in avoiding its use but also, and directly, the likelihood that consumers will *not* be confused by its use."). Still, at this stage, where Plaintiff has presented evidence that "some consumers . . . make no association between the word 'butter' and wine," Opp. at 14 (citing Dkt. No. 37-12, Ex. A at 167:14–168:8), the Court cannot say that no material dispute of fact exists.

Chardonnay wine, while Plaintiff argues that TWG uses "RICH & BUTTERY" as a name for its flavor first product just as JaM uses the BUTTER mark. Plaintiff points to the large text size used for the mark compared to the varietal name or the FRANZIA logo. *See* Dkt. No. 1 at ¶21. The ultimate design does make the font of "RICH & BUTTERY" more prominent than the remaining text on the box. Further, Plaintiff points to evidence showing TWG referring to "RICH & BUTTERY" arguably in the manner of a brand name. *See e.g.*, Dkt. No. 37-38, Ex. II (sell sheets listing "RICH & BUTTERY CHARDONNAY"); 37-13, Ex. G (press interview in which TWG's Chief Marketing Officer Jeff Dubiel was quoted as saying "we're coming out with a new Chardonnay called Rich & Buttery"). Thus, notwithstanding Defendant's arguments, the Court must make all reasonable inferences in favor of Plaintiff and assess whether a reasonable jury could find that the way Defendant used RICH & BUTTERY made it similar to the BUTTER mark.

The typefaces of the two marks are distinct, with the RICH & BUTTERY phrase appearing in two straight lines in transparent white font, while the BUTTER mark does not appear in a line, but instead in black font with different sized letters in a jumbled format. *Compare* Dkt No. 1 at ¶21 *with* ¶25. Both appear with a yellow background. *Id.* Additionally, both marks appear centrally on their respective packaging. *Id.* While not identical, the sound and meaning of the marks are not so dissimilar as to preclude the existence of a triable issue of fact. RICH & BUTTERY noticeably contains the word BUTTER in it, and both marks are used to convey the same meaning: the flavor profile of the wine.

\* \* \* \*

Considering these factors, the Court cannot find that a jury would have to conclude that no reasonable consumer is likely to be confused. Instead, material disputed facts exist so as to preclude summary judgment. The Court stresses that it is not making any findings of fact or conclusions of law at this stage. Further, the Court has not endeavored to identify every disputed issue of material fact: the factual issues discussed above are simply examples of why summary judgment is not appropriate here.

### B. Fair Use

To establish a fair use defense, a defendant must show that the use: (1) employs the alleged mark for purposes other than as a trademark, (2) deploys the term to describe characteristics of its goods, and (3) adopts the term in good faith. 15 U.S.C. §1115(b)(4). Defendant argues that it does not use "buttery" as a mark, and that it instead uses the term to describe its Chardonnay wine. Mot. at 22–24. As noted above, issues of fact exist as to whether Defendant uses RICH & BUTTERY to describe the wine or as a name for the product. Although the Court finds some persuasive force in Defendant's argument that the use of "buttery" instead of "butter" (an adjective instead of a noun) leans in favor of description, the close relationship between the two words and the prominence of the "RICH & BUTTERY" precludes summary judgment on the basis of fair use. While the Court has some reason to be concerned based on this and other lawsuits that Plaintiff may be effectively attempting to monopolize use of the term "buttery" to describe Chardonnay, summary judgment is not warranted. It remains to be seen whether judgment as a matter of law may be appropriate at or after trial.

### IV. MOTIONS TO SEAL

The parties further filed administrative motions to file under seal portions of their briefs and various other filings in this case. *See* Dkt. Nos. 35, 37, 42. Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in

disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

The Court must "balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* Civil Local Rule 79-5 supplements the compelling reasons standard set forth in *Kamakana*: the party seeking to file a document or portions of it under seal must "establish[] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law . . . The request must be narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b).

Having carefully considered the pending administrative motions to file under seal, the Court finds a significant defect preclude granting these motions. The parties did not narrowly tailor their sealing requests, as many sealing requests seek to redact information otherwise unredacted in other portions of the same or other filings. For example, Defendant seeks at one point to redact "creating a flavor-first Chardonnay," *see* Mot. at 3, but the same reference on the next page is unredacted, *see id.* at 4 ("TWG decided that one of its new flavor-first wines would be a buttery Chardonnay."). Similarly, Plaintiff seeks to seal a press interview transcript with TWG's Chief Marketing Officer Jeff Dubiel, while specifically identifying the same interview and statements from that interview in the Complaint, which is publicly available. *Compare* Dkt. No. 1 at ¶20 *with* Dkt. No. 37-13, Ex. G. These examples are not meant to be an exhaustive list of the parties' failures; rather they demonstrate the ways in which the parties have not submitted proper sealing requests.

Additionally, the parties provide limited explanation as to why substantial volumes of information need to be redacted in this case. Parties point to their CONFIDENTIAL designation,

which is typically insufficient to meet the compelling reasons standard.  Further, noting that the exhibits refer to product development efforts or market research does not explain the need to redact substantial portions of, or even entire, exhibits.  For instance, the parties seek to seal the entirety of Exhibit 4 to the Manes Declaration, a portion of the deposition of John Truchard.  *See* Dkt. No. 35-19, Ex. 4.  However, in this transcript, Truchard recognizes that the underlying flavor profile of a buttery Chardonnay has been well known in California for many years, *see id.* at 72:23–73:2, which is public knowledge as recognized in Defendant's summary judgment motion, *see* Mot. at 5.  Simply because a representative of one of the companies involved in this litigation states a fact, the fact does not automatically become business or marketing strategy.  The parties must narrowly tailor their requests to actual references to confidential strategy to meet the standard.

## V.   CONCLUSION

For the reasons noted above, the Court **DENIES** Defendant's motion for summary judgment.  The Court further **DENIES** the parties' motions to seal.  The Court **DIRECTS** the parties to file, within ten days of the date of this order, public versions of the motions and exhibits or an amended motion to seal that narrowly tailors the sealing requests as explained above.

**IT IS SO ORDERED.**

Dated: 4/17/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge