1   HANSON BRIDGETT LLP
    NOEL M. COOK (SBN 122777)
2   ncook@hansonbridgett.com
    GARNER K. WENG (SBN 191462)
3   gweng@hansonbridgett.com
    JANIE L. THOMPSON (SBN 291622)
4   jthompson@hansonbridgett.com
    425 Market Street, 26th Floor
5   San Francisco, California 94105
    Telephone:     (415) 777-3200
6   Facsimile:     (415) 541-9366

7   DICKENSON, PEATMAN & FOGARTY
    J. SCOTT GERIEN (SBN 184728)
8   sgerien@dpf-law.com
    JOY L. DURAND (SBN 245413)
9   jdurand@dpf-law.com
    1455 First Street, Suite 301
10  Napa, California 94559
    Telephone:     (707) 252-7122
11  Facsimile:     (707) 255-6876

12  Attorneys for Plaintiff
    JaM CELLARS, INC.

13

14                 **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16

17  JaM CELLARS, INC.,                    Case No. 4:19-cv-01878-HSG
                                          (Consolidated Case)
18              Plaintiff,
                                          **PLAINTIFF JaM CELLARS, INC.'S**
19         v.                             **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN SUPPORT OF ITS**
20  THE WINE GROUP LLC,                   **MOTION FOR PRELIMINARY**
                                          **INJUNCTION**
21              Defendant.
                                          Date:    July 9, 2020
22                                        Time:    2:00 p.m.
                                          Dept:    Courtroom 2, 4th Floor
23                                        Judge:   Hon. Haywood S. Gilliam, Jr.

24

25

26

27

28

16543828.1

# TABLE OF CONTENTS

Page

I.     INTRODUCTION...........................................................................................................1

II.    FACTUAL BACKGROUND .........................................................................................3

       A.     Plaintiff JaM Cellars' JAM® wine .................................................................3

       B.     Defendant The Wine Group's new BOLD & JAMMY wine ..........................5

       C.     Price Points of The Wine Group's BOLD & JAMMY wine ...........................11

       D.     Lower Quality of Defendant The Wine Group's BOLD & JAMMY wine ...........12

III.   ARGUMENT .................................................................................................................14

       A.     There are at a minimum serious questions going to the merits of Plaintiff
              JaM Cellars' trademark infringement claims against Defendant The Wine
              Group.................................................................................................................14

              1.     Defendant's BOLD & JAMMY mark uses the entirety of Plaintiff
                     JaM Cellars' JAM® mark—and puts particular emphasis on it in the
                     way it is presented on packaging.................................................................15

              2.     Defendant's goods at issue are identical to those of Plaintiff JaM
                     Cellars.............................................................................................................17

              3.     Plaintiff JaM Cellars' JAM® mark is valid and strong.................................18

                     a.     Plaintiff JaM Cellars' JAM® mark is commercially strong. ...........18

                     b.     Plaintiff JaM Cellars' JAM® mark is conceptually strong..............18

              4.     Defendant uses the same marketing channels as Plaintiff JaM
                     Cellars.............................................................................................................19

              5.     The degree of consumer care for the goods at issue contributes to
                     likelihood of confusion..................................................................................20

              6.     Defendant The Wine Group intentionally targeted and copied
                     Plaintiff JaM Cellars' brands such as JAM® to try to trade on JaM
                     Cellars' goodwill. ..........................................................................................20

       B.     There is a likelihood of irreparable injury........................................................22

       C.     The balance of equities tips sharply towards Plaintiff JaM Cellars here. ................23

       D.     The requested preliminary injunction is in the public interest. ..............................24

IV.    CONCLUSION ..............................................................................................................24

Case No. 4:19-cv-01878-HSG
(Consolidated Case)
-i-
PLTF JaM CELLARS, INC.'S MEMO OF Ps & As ISO MOTION FOR PRELIMINARY INJUNCTION

16543828.1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011).................................................................14

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir. 1979)..........................................................2, 14, 17, 20

*Arcsoft, Inc. v. Cyberlink Corp.*,
   153 F. Supp. 3d 1057, 1071 (N.D. Cal. 2015) ....................................22

*Beer Nuts, Inc. v. Clover Club Foods Co.*,
   711 F.2d 934 (10th Cir. 1983)...............................................................15

*Boldface Licensing & Branding v. By Lee Tillett, Inc.*,
   940 F. Supp. 2d 1178 (C.D. Cal. 2013)...........................................19, 23

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
   174 F.3d 1036 (9th Cir. 1999)..........................................................19, 20

*Brooklyn Brewery Corp v. Black Ops Brewing, Inc.*,
   156 F. Supp. 3d 1173, 1186 (E.D. Cal. 2016)...................................23, 24

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*,
   109 F.3d 1394 (9th Cir. 1997)...............................................................16

*E. & J. Gallo Winery v. Consorzio del Gallo Nero*,
   782 F. Supp. 457 (N.D. Cal. 1991) .....................................................17, 20

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135,1148 (9th Cir. 2002).......................................................20

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
   314 F.2d 149 (9th Cir. 1963).............................................................15, 21

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   618 F.3d 1025 (9th Cir. 2010).............................................................14, 19

*G. D. Searle & Co. v. MDX Purity Pharmacies, Inc.*,
   275 F. Supp. 524 (C.D. Cal. 1967)........................................................21

*Herb Reed Enters., LLC v. Florida Entertainment Mgm't, Inc.*,
   736 F.3d 1239 (9th Cir. 2013)...............................................................14

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*,
   559 F.3d 985 (9th Cir. 2009).................................................................24

*JL Beverage Company v. Jim Beam Brands Co.*,
    828 F.3d 1098 (9th Cir. 2016)..........................................................................19

*La Quinta Worldwide, LLC v. Q.R.T.M., S.A. de C.V.*,
    762 F.3d 867 (9th Cir. 2014)............................................................................17

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    632 F.2d 817 (9th Cir.1980)..............................................................................15

*Moroccanoil, Inc. v. Moroccan Gold, LLC*,
    590 F. Supp. 2d 1271 (C.D. Cal. 2008).............................................................23

*Official Airline Guides, Inc. v. Goss*,
    6 F.3d 1385 (9th Cir. 1993)...............................................................................21

*Ossur HF v. Manamed, Inc.*,
    331 F. Supp. 3d 1005, 1017 (C.D. Cal. 2017)........................................22, 23, 24

*Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee
    en 1772*, 396 F.3d 1369, 1376 (Fed. Cir. 2005) .......................................17, 20

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
    469 U.S. 189 (1985) ..........................................................................................19

*Perfumebay.com Inc. v. eBay, Inc.*,
    506 F.3d 1165 (9th Cir. 2007)...........................................................................15

*Playboy Enterprises, Inc. v. Netscape Comm'n Corp.*,
    354 F.3d 1020 (9th Cir. 2004)...........................................................................21

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014)...........................................................................14

*Stark v. Diageo Chateau & Estate Wines Co.*,
    907 F. Supp. 2d 1042 (N.D. Cal. 2012) .............................................................20

*Stark v. Diago Chateau & Estate Wines Co.*,
    907 F. 2d 1042 (N.D. Cal. 2012).......................................................................22

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
    875 F.3d 426 (9th Cir. 2017).............................................................................18

*SunEarth, Inc. v. Sim Earth Solar Power Company*,
    846 F. Supp. 2d 1063 (N.D. Cal. 2012) .............................................................22

*Taylor Wine Co., Inc. v. Bully Hill Vineyards, Inc.*,
    569 F.2d 731 (2d Cir.1978)...............................................................................20

*Tokyo Broad. Sys. v. Am. Broad. Companies, Inc.*,
    2009 WL 10668456 (C.D. Cal. Aug. 12, 2009) .................................................16

1

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................................................14, 22

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

This is the third trademark lawsuit that Plaintiff JaM Cellars has been forced to bring against Defendant The Wine Group for intentionally targeting and copying its brands—this time, JaM Cellars' namesake JAM® Cabernet Sauvignon. JaM Cellars asks the Court for a narrowly-tailored preliminary injunction that echoes the principal terms on which the first lawsuit settled and focuses on the ways in which Defendant uses JAM (as part of JAMMY) in such a prominent and ███████████ presentation that consumers are likely to be confused.

JaM Cellars is a winemaker that has been described in articles as "a remarkable success story rooted in the Napa Valley." With second-generation Napa Valley vintners John and Michele Truchard being the 'J' and 'M' in "JaM," JaM Cellars focuses on easy-to-love, everyday wines. JaM Cellars has earned gold medal awards, rave reviews, and commercial success with its BUTTER® Chardonnay and its JAM® Cabernet Sauvignon. Indeed, BUTTER® and JAM® are in many ways the face of JaM Cellars—a linked pair—with much of its marketing and promotion showing the two wines together and referring to "Butter and JaM" together. JaM Cellars owns U.S. federal registrations for its BUTTER® trademark and its JAM® trademark, issued in 2011 and 2010, respectively; and both registrations have attained "incontestable" status with the U.S. Patent & Trademark Office. According to Defendant's own documents, JaM Cellars' BUTTER® Chardonnay and JAM® Cabernet have, respectively, ███████ market share ████ ████████████████████████████████████. Indeed, ███████████████████████████████ ████████████████████████████████████████. However, ███████████████████████████ ████ Defendant instead set its sights on knocking off the brands and taking advantage of the marketplace goodwill attached to each of the marks. ████████████████████████████ █████████████████████████████████████████ ███████████████████████████████████████ █████████████████████████████████

Defendant ultimately decided to chase JaM Cellars' BUTTER® and JAM® brands through line extensions of its existing wines—and in the process became quite aware of how JaM Cellars views its rights in BUTTER® and JAM®:

- In 2017, Defendant launched an extension of its CUPCAKE line of bottled wines that it called BUTTERKISSED. When JaM Cellars' informal approaches to Defendant were rebuffed, this wine became the subject of a lawsuit before this Court (Case No. 17-cv-02333-WHO). The parties settled this matter, with the restriction that ████████████████████████████████████████
████████████████████████████████████████

- More recently, Defendant launched line extensions of its FRANZIA line of boxed wines:
  - In 2018, Defendant launched a Chardonnay analog to JaM Cellars' BUTTER® that Defendant calls RICH & BUTTERY (which is the subject of a lawsuit before this Court, Case No. 19-cv-01878-HSG).
  - Now, Defendant has recently launched a Cabernet analog to JaM Cellars' JAM® that Defendant calls BOLD & JAMMY (the subject of the instant lawsuit).

For both of the FRANZIA wines, Defendant has used a new style of packaging for the wine boxes, different than the packaging used for its standard line of FRANZIA wine. This translates into Defendant's RICH & BUTTERY and BOLD & JAMMY becoming a linked pair, just like JaM Cellars' BUTTER® and JAM®. Moreover, despite understanding how JaM Cellars views its rights in BUTTER® and JAM® based on the settlement of the BUTTERKISSED matter, Defendant immediately ran past those bounds with its new boxed-wine plays. RICH & BUTTERY and BOLD & JAMMY constitute the most dominant text anywhere on the respective boxes—with thick bold font larger than that used anywhere else on the package, and BUTTERY and JAMMY appearing on lines by themselves, drawing further attention to those terms. Indeed, ██████████
████████████████████████████████████████
████████████████████

In short, the *Sleekcraft* factors bearing on trademark infringement show that consumers will be likely to be confused into associating Defendant's JAMMY with JaM Cellars' JAM®:

- Defendant's internal documents and testimony confirm that it was seeking to replicate JaM Cellars' BUTTER® and JAM® brands.

- Defendant's use of BOLD & JAMMY incorporates the entirety of JaM Cellars' federally-registered mark JAM®—and is used for the same type of wine, Cabernet Sauvignon.

- Defendant's packaging puts particular emphasis on BOLD & JAMMY, making it such a dominant feature that consumers are likely to see this as the name of the wine.

- Based on Defendant's existing sales channels with its FRANZIA line of wines, including its RICH & BUTTERY Chardonnay, Defendant will seek to sell or continue selling its BOLD & JAMMY Cabernet through the same retail stores and channels as JaM Cellars.

Moreover, as detailed further herein, the resulting consumer confusion linking Defendant's use of JAMMY to JaM Cellars' JAM® creates an undesired association between JaM Cellars and Defendant's lower-price boxed wine. Indeed, the FRANZIA brand has a storied association with cheaper, lower-quality boxed wine—such that it is even part of the name of a college drinking game, "Tour de Franzia." In turn, with Defendant's already-released RICH & BUTTERY in the same line of wines as a reference, consumers will in fact find it to be a lower-quality wine than JaM Cellars. Online consumer reviews describe Defendant's sister wine to BOLD & JAMMY as "GROSS," "AWFUL," "NASTY," and "nothing buttery about it." With similar manufacturing and similar quality of ingredients as its past attempt, Defendant's BOLD & JAMMY emulation of JaM Cellars' JAM® will cause irreparable harm to JaM Cellars' reputation and marketplace goodwill.

JaM Cellars moves this Court for a narrowly tailored preliminary injunction prohibiting Defendant's use of JAM (or a derivative such as JAMMY) as shown in Defendant's current label design, or in any label with similar overpowering size, prominence, or emphasis in the use of JAM (or a derivative such as JAMMY).

## II.    FACTUAL BACKGROUND

### A.    Plaintiff JaM Cellars' JAM® wine

Plaintiff JaM Cellars is a winemaker that has been described in articles as "a remarkable success story rooted in the Napa Valley." Declaration of Janie Thompson ("Thompson Decl.") Ex. A. Second-generation Napa Valley vintners John Truchard ("John") and his wife Michele founded JaM Cellars in 2009 with the intent of providing quality, full-bodied California wines to consumers at a reasonable price. Declaration of John Truchard ("Truchard Decl.") ¶ 2. John and

16543828.1

1  Michelle are the 'J' and 'M' in "JaM." Truchard Decl. ¶ 2.

2      JaM Cellars' first productions were of its JAM® Cabernet Sauvignon and BUTTER®

3  Chardonnay. The two wines are, in many ways, the face of the winery—a linked pair, one red, one

4  white— and JaM Cellars presents and markets the two together frequently. JaM Cellars released

5  its first vintage of JAM® Cabernet Sauvignon in 2009 and released its first vintage of BUTTER®

6  Chardonnay in 2010. Declaration of Joy L. Durand ("Durand Decl."), Ex. A (Truchard Dep.

7  20:25-21:03, 21:10-12); Truchard Decl. ¶ 2. JaM Cellars has earned medals, awards, rave reviews,

8  and commercial success with its BUTTER® Chardonnay and its JAM® Cabernet Sauvignon. As

9  examples, JaM Cellars' BUTTER® Chardonnay earned a Silver Medal at the San Francisco

10  Chronicle International Wine Competition and has been honored as a "Hot Brand" by Impact

11  Magazine for the last four years. Truchard Decl. ¶ 13. JaM Cellars' JAM® Cabernet Sauvignon

12  has earned Gold, Silver, and Bronze Medals at the TEXSOM International Wine Awards, and the

13  2015 vintage earned 90 points from Wine Enthusiast. Truchard Decl. ¶ 13. JaM Cellars itself was

14  named "Wine Marketer of the Year" for best implementing "creative new ideas and innovative

15  thinking in wine marketing" and playing "a central role in changing the face of the industry."

16  Thompson Decl. Ex. B.

17      Much of JaM Cellars' marketing and promotion shows the BUTTER® and JAM® wines

18  together and refers to "Butter and JaM" together:

19

20

21

22

23       

24

25

26

27

28

PLTF JaM CELLARS, INC.'S MEMO OF Ps & As ISO MOTION FOR PRELIMINARY INJUNCTION

Truchard Decl. ¶¶ 11-12, Ex. 4. At the BottleRock music festival in Napa, California, for example, JaM Cellars' JAM® and BUTTER® brands were prominently featured and seen by over 600,000 festivalgoers, including together and in sequence as shown below:



Truchard Decl. ¶ 9.

JaM Cellars owns U.S. federal registrations for its JAM® trademark and its BUTTER® trademark, issued in 2010 and 2011, respectively—as well as for its JAM CELLARS® trademark, issued in 2010. Thompson Decl. Ex. C. All three registrations have attained "incontestable" status with the U.S. Patent & Trademark Office. *Id.*

**B.      Defendant The Wine Group's new BOLD & JAMMY wine**

Defendant The Wine Group is the second largest winery in the United States with annual sales volume of approximately 53 million cases of wine. Durand Decl., Ex. D. Defendant's

1   FRANZIA line of wines is the largest selling wine in the United States by volume. Durand Decl.,

2   Ex. G. Defendant's FRANZIA brand is known for "cheap boxed wines." Thompson Decl. Ex. D.

3   ███████████████████████████████████ Durand Decl., Ex. H. ██████

4   ████████████████████████████████████████████████████████

5   ██████████████████████ Durand Decl., Ex. I (Deposition of Collin Cooney

6   ("Cooney Depo.") 30:9-15).

7          Given JaM Cellars' success with BUTTER® and JAM®, the brands appeared on

8   Defendant's radar at least as early as 2016. Durand Decl. Exs. J, F (Deposition of Jeff Dubiel

9   ("Dubiel Depo.") 15:3-7, 14-16; 16:7-17). In Summer 2016, Defendant's Vice President of

10  Marketing, Eben Gillette, proposed to his supervisor, Chief Marketing Officer Jeff Dubiel, that

11  ██████████████████████████████████████████████ Durand

12  Decl. Exs. J, F (Dubiel Depo. 15:3-7, 14-16; 16:7-17). However, rather than ███████████,

13  Defendant instead set its sights on knocking off JaM Cellars' brands and taking advantage of the

14  marketplace goodwill attached to its marks. Durand Decl. Exs. W, I (Cooney Depo. 70:13-23).

15        ██████████████████████████████████████████████

16  ██████████████████████████████████████████

17  ██████████████ Durand Decl. Ex. K at TWGOU13599, Ex. F (Dubiel Depo. 14-16; 30:21-

18  32:1; 33:19-34:2; 36:19-37:13). Indeed, Defendant's internal analysis documents identified ███

19  ██████████████████████████████ Durand Decl. Ex. K at TWG0013616, Ex.

20  F (Dubiel Depo. 41:12-25; 45:13-19); *see also* Durand Decl. Ex. L at TWG0013441, Ex. F

21  (Dubiel Depo. 57:13-19; 61:1-5).

22         In or about January of 2017, JaM Cellars learned that Defendant had filed a Certificate of

23  Label Approval for a new Chardonnay wine called BUTTERKISSED under its CUPCAKE line of

24  wines. Durand Decl. Ex. M. JaM Cellars objected to Defendant's label, but in April 2017,

25  Defendant nevertheless introduced the BUTTERKISSED wine—and JaM Cellars filed a

26  trademark infringement lawsuit on April 25, 2017 in this District (Case No. 03-17-cv-02333-

27  WHO). Durand Decl. Ex. N. As Defendant acknowledged, ███████████████████

28  ██████████████████████████ Durand Decl. Ex. F (Dubiel Depo. 67:2-5).

-6-

Case No. 4:19-cv-01878-HSG
(Consolidated Case)
16543828.1
PLTF JaM CELLARS, INC.'S MEMO OF Ps & As ISO MOTION FOR PRELIMINARY INJUNCTION

1    At the same time that JaM Cellars had objected to Defendant's BUTTERKISSED brand,

2    Defendant was ███████████████████████████████████ Durand Decl. Ex. O at

3    TWG0016772. ████████████████████████████████ *Id.* ████

4    ████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████

6    ███████ *Id.* (emphasis added). ████████████████████

7    ████████████████████████████ Durand Decl. Exs. P, F (Dubiel Depo. 203:1-17).

8        Early in the process, █████████████████████████████

9    ████████████████████████████████████████████

10       Durand Decl. Exs. Q, F (Dubiel Depo. 89:1-91:11). ██████████████

11   ████████████████████████████████████████████

12   Durand Decl. Ex. W. ████████████████████████████████████

13   ████████████████████████████████████████████████

14   Durand Decl. Ex. I (Cooney Depo. 55:6-11, 58:5-14). As one of Defendant's documents

15   presented, JaM Cellars' BUTTER® and JAM® brands held ██████████ market share (by

16   volume) ████████████████████:

17   ████████████████████████████████████████████████

18   ████████████████████████████████████████████████

19   █████████████████████████████████

20   ██████████████████████████████

21   ███████████████████████████████████████████

22   ████████████████████████████████████████

23   Durand Decl. Ex. Q (listing "$ share" and "Vol Share").

24       In early 2018, ████████████████████████████

25   ████████████████████ Durand Decl. Exs. R, I (Cooney Depo. 89:20-90:5;

26   106:5-10). ████████████████████████████████████

27   ████████████████████████████████████ Durand Decl. Ex. R

28   at TWG0014533. ██████████████

-7-

Case No. 4:19-cv-01878-HSG
(Consolidated Case)
PLTF JaM CELLARS, INC.'S MEMO OF Ps & As ISO MOTION FOR PRELIMINARY INJUNCTION

16543828.1

1 ████████████████████████████████████████████████████████

2 Durand Decl. Ex. R at TWG0014533, TWG0014539.

3    The BUTTERKISSED lawsuit proceeded through 2017 until early 2018 when the parties

4 settled the dispute ██████████████████████████████████████████

5 ██████████████████████████████████████████████████

6 ████████████████████████████████ Durand Decl. Ex. JJ.

7   ██████████████████████████████████████████████

8 ███████████████████████████████████████████████

9 ██████████ Durand Decl. Ex. F (Dubiel Depo. 70:16-72:10; 73:9-16), Ex. I (Cooney Depo. 32:9-

10 24). In fact, ███████████████████████████████████████████

11 ███████████████████████████████████████████

12 ███████████████████████████████████████████ Durand Decl. Exs.

13 S, I (Cooney Depo. 102:20-103:3).

14   In developing ███████████████████████████████████

15 ████████████████████████████████████████████████

16 █████████████████████████████████████████████████

17 █████████████████████████████████████████████

18 ███████████████████████████ Durand Decl. Ex. T. Despite these alternatives,

19 █████████████████████████████████████████ Durand Decl.

20 Exs. U, V (Deposition of Bahia Sommers ("Sommers Depo.") 28:14-29:2, 29:12-22).

21   In May 2018, ██████████████████████████████████

22 ███████████████████████████████████████████

23 ████████ Exs. W, I (Cooney Depo. 68:3-70:9). █████████████████████

24 ███████████████████████████████████████████

25 █████████████████████████████████████████████████

26 ████████ Durand Decl. Exs. W, I (Cooney Depo. 70:13-23). ██████████████

27 ████████████████████████ Durand Decl. Ex. I (Cooney Depo. 72:2-7).

28   In 2018, █████████████████████████████████

Case No. 4:19-cv-01878-HSG
(Consolidated Case)

PLTF JaM CELLARS, INC.'S MEMO OF Ps & As ISO MOTION FOR PRELIMINARY INJUNCTION

16543828.1

1    Durand Decl. Exs. X, F (Dubiel Depo. 104:7-105:18).

2

3    Durand Decl.

4    Ex. X at TWG0000579-80.

5    (Durand Decl. Ex. X at TWG0000579-80, Ex. F (Dubiel Depo. 106:1-14).

6    In August of 2018,

7

8    Durand Decl. Exs. U, V (Sommers Depo. 28:14-29:2, 29:12-22).

9

10

11    (Durand Decl. Exs. Y, Z).

12

13

14    Durand Decl. Ex. AA, V (Sommers Depo. 84:7-86:22).

15    Defendant then used the                              for its BOLD & JAMMY packaging. *See,*

16    *e.g.*, Thompson Decl. Exs. E, F.

17

18    Durand Decl. Ex. I

19    (Cooney Depo. 94:17-95:6).

20

21

22    Durand Decl. Exs. S, I (Cooney Depo. 100:19-102:19).

23

24

25

26    Durand Decl. Ex. BB at TWG0001206, Ex. F (Dubiel Depo. 149:16-151:21).

27

28

1 ████████████████████████████████████████████████████

2 Durand Decl. Exs. CC, F (Dubiel Depo. 159:10-167:10). For reference, below are images of the

3 packaging of Defendant's "base tier" FRANZIA wines:



12 And below are images of the packaging of Defendant's ██████ FRANZIA wines, RICH &

13 BUTTERY (subject of an existing lawsuit) and BOLD & JAMMY (subject of the present

14 lawsuit):



24 ████████████████████████████████████████████████

25 ██████████ Durand Decl. Exs. DD, I (Cooney Depo. 72:18-73:6). ████████

26 ████████████████████████████████████████████

27 ████████████ Durand Decl. Ex. EE at TWG0016802, Ex. I (Cooney Depo. 160:10-

28 161:15). ████████████████

1 ███████████████████████████ Durand Decl. Ex. FF. ██████████

2 ████████████████████████████████████████████████████

3 ████████████████████████ Durand Decl. Exs. GG, I (Cooney Depo. 78:17-

4 79:6; 85:1-86:11).

5          In September of 2018, █████████████████████████████

6 █████████████████████████████████████████

7 ██████ Durand Decl. Exs. HH, I (Cooney Depo. 157:14-158:16). ███████████

8 ████████████████████████████████████████████████████

9 ███████████████████████████████ Durand Decl. Exs. HH, I

10 (Cooney Depo. 158:17-159:7).

11          Based on its materials to date, Defendant appears likely to present or is already presenting

12 the BOLD & JAMMY name to wine distributors and retailers as the standalone name of the wine.

13 ████████████████████████████████████████████

14 ████████████████████████████████████████████████████

15 ███████████████████ Durand Decl. Exs. B, F (Dubiel Depo. 127:10-128:15). The

16 point-of-sale materials for the RICH & BUTTERY wine, which can be used by retailers to display

17 the wine in different parts of the store, also feature the RICH & BUTTERY mark in a dominant

18 manner separate and apart from other elements of the packaging—████████████████

19 ████████████████████████████████████████████████████

20 █████████ Durand Decl. Exs. C, I (Cooney Depo. 168:11-169:20, 170:16-171:15, 193:21-

21 194:7). In its press interviews for the release of RICH & BUTTERY, Defendant also states "we're

22 coming out with a new Chardonnay called Rich & Buttery." Durand Decl. Ex. G at

23 TWG0001020-22, Ex. F (Dubiel Depo. 137:5-138:4). Given Defendant's launch of BOLD &

24 JAMMY as the Cabernet Sauvignon analog to RICH & BUTTERY Chardonnay in the ████████

25 ██████ product line, Defendant is likely to present BOLD & JAMMY in a similar standalone

26 fashion to retailers and wine distributors.

27          **C.       Price Points of The Wine Group's BOLD & JAMMY wine**

28          Based on Defendant's plans for its ██████████ extensions including RICH &

16543828.1

PLTF JaM CELLARS, INC.'S MEMO OF Ps & As ISO MOTION FOR PRELIMINARY INJUNCTION

1  BUTTERY and BOLD & JAMMY, it appears that the suggested retail price for the BOLD &

2  JAMMY wine is around $16.99 for the five liter size and $12.99 for the three liter size. *See*

3  Durand Decl. Ex. L (Dubiel Depo. 188:5-9) (discussing RICH & BUTTERY). Based on existing

4  distribution of Defendant's FRANZIA wines and its sister ████████ RICH & BUTTERY

5  wine, Defendant's BOLD & JAMMY wine is or will be sold throughout the United States at

6  supermarkets, big box stores such as Target and Walmart, specialty retailers such as BevMo and

7  Total Wine, convenience stores like 7-Eleven, and drug stores such as CVS and Walgreens—

8  which are the same type of stores where JaM Cellars' BUTTER® and JAM® wines are sold. *See*

9  Durand Decl. Ex. F (Dubiel Depo. 191:1-192:14). And as mentioned, wine producers cannot

10 control how retailers display wine. Durand Decl. Ex. A (Truchard Depo. 74:12-75:9; 75:10-20),

11 Ex. F (Dubiel Depo. 136:2-7), Ex. I (Cooney Depo. 170:16-171:15, 180:4-16); Truchard Decl. ¶

12 17. Accordingly, retailers are likely to display RICH & BUTTERY and BOLD & JAMMY

13 together as a linked pair, just as they do with JaM Cellars' BUTTER® and JAM®.

14        **D.      Lower Quality of Defendant The Wine Group's BOLD & JAMMY wine**

15        Defendant's RICH & BUTTERY and BOLD & JAMMY wines are of lower quality than

16 Plaintiff's award-winning BUTTER® Chardonnay and JAM® Cabernet Sauvignon. In attempting

17 to mimic Plaintiff's BUTTER® Chardonnay, ██████████████████████████████

18 ████████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████ In developing

20 the RICH & BUTTERY Chardonnay, ████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████████

23 ██████████████████████████ Durand Decl. Ex. I (Cooney Depo.

24 73:20-25, Ex. 45). ████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████████████

26 ████████████████████████████████ Durand Decl.

27 Ex. I (Cooney Depo. 75:15-16, 76:6-7, 78:1-110). ████████████████████████

28 ████████████████████████████ Instead, JaM Cellars' wines are

16543828.1

1   produced according to traditional, quality winemaking. The first vintage of JAM® Cabernet

2   Sauvignon was a 2007 from the Coombsville Appellation in Napa Valley. Today, JAM® Cabernet

3   Sauvignon is California-appellated, with much of the fruit being sourced from select farmers

4   across the state and then processed and oak-aged to the same high quality standards. Truchard

5   Decl. ¶ 3.

6         On totalwine.com, Defendant's RICH & BUTTERY has six reviews, with an overall score

7   of 3.1 stars (out of 5). Thompson Decl. Ex. G. Example comments are:

8         Gross!

9         I wanted a fuller bodied everyday Chardonnay to keep in fridge in case I wanted a glass
         with dinner this was sweet and thick like syrup. My usual affordable go to bottle wines are

10        Toasted Head or Kendall Jackson and was hoping to find a box wine that was similar in
         style. I Don't recommend this.

11        . . . .

12        NASTY

13        I didn't realize that had a new flavor, thought I was buying my regular Chardonnay, once
14        sip had to spit it out, took it back to the store and demanded a refund, they gave me option
         of going back and getting another box and she said she had never saw this box before, but

15        it was in my regular Chardonnay's spot on the shelf, don't be fooled this in not just a new
         updated box it is their new flavor, nothing buttery about it. I had to exchange for another

16        brand since they didn't have mine. If they don't bring regular Chardonnay back to my store
         I will be switching brands for good. Would have given this a 0 rating if given the chance.

17

18  Thompson Decl. Ex. G. In contrast, JaM Cellars' BUTTER® wine has 67 reviews on the same

19  website, with an overall score of 4.5 stars (out of 5); and JaM Cellars' JAM® wine has 1 review

20  on the same website, with a score of 5 stars (out of 5). Thompson Decl. Exs. H, I.

21        Similarly, on wineweb.com, a consumer review of Defendant's RICH & BUTTERY

22  wrote:

23        Chardonnay "Rich and Buttery" - Hard if not impossible to swallow. Franzia changed
         something and their wine went from pretty good to absolutely awful. I am not a wine snob

24        but also, I am no fool. I have over 40-years experience enjoying wine with meals. Avoid
         this wine, it can destroy an otherwise wonderful meal.

25

26  Thompson Decl. Ex. J.

27        As a sister wine in the ███████ line, Defendant's RICH & BUTTERY wine is an

28  appropriate reference for considering how consumers will view Defendant's BOLD & JAMMY

1    wine.

2    **III.   ARGUMENT**

3        Courts consider four factors when evaluating motions for a preliminary injunction, namely

4    whether: (1) the moving party has demonstrated that it is likely to succeed on the merits; (2) the

5    moving party will suffer irreparable injury if the relief is denied; (3) the balance of the hardships

6    favor the moving party; and (4) the public interest favors granting relief. *See Pom Wonderful LLC*

7    *v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*,

8    555 U.S. 7, 20 (2008)). A stronger showing on one element may offset a weaker showing on

9    another. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-33 (9th Cir. 2011). In

10    that regard, the Ninth Circuit has adopted a "sliding scale approach," such that "'serious questions

11    going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support

12    issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of

13    irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v.*

14    *Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011); *see also Herb Reed Enters., LLC v. Florida*

15    *Entertainment Mgm't, Inc.*, 736 F.3d 1239, 1242 (9th Cir. 2013).

16       **A.   There are at a minimum serious questions going to the merits of Plaintiff JaM**
17            **Cellars' trademark infringement claims against Defendant The Wine Group.**

        "Eight factors, sometimes referred to as the *Sleekcraft* factors, guide the inquiry into

18    whether a defendant's use of a mark is likely to confuse consumers." *Fortune Dynamic, Inc. v.*

19    *Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) (citing *AMF Inc.*

20    *v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). Those factors are:

21

22        (1) the similarity of the marks; (2) the strength of the plaintiff's mark; (3) the proximity or
relatedness of the goods or services; (4) the defendant's intent in selecting the mark; (5)
23        evidence of actual confusion; (6) the marketing channels used; (7) the likelihood of
expansion into other markets; and (8) the degree of care likely to be exercised by
purchasers of the defendant's product.

24    *Id.* These factors are "helpful guideposts . . . not a scorecard, a bean-counter or a checklist." *Id.* at

25    1031.

26

27

28

16543828.1

1    **1.    Defendant's BOLD & JAMMY mark uses the entirety of Plaintiff JaM**
     **Cellars' JAM® mark—and puts particular emphasis on it in the way it**
2    **is presented on packaging.**

3    In evaluating similarity, "[i]t is axiomatic in trademark law that 'side-by-side' comparison

4    is not the test." *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir.1980). "It is not

5    necessary to constitute an infringement that every word of a trade-mark should be appropriated. It

6    is sufficient that enough be taken to deceive the public in the purchase of a protected article."

7    *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 161 (9th Cir. 1963). "It is the

8    general public, the unskilled purchaser, who is entitled to protection; and in determining whether

9    there is a likelihood of confusion we must remember that the members of the purchasing public

10   have only general impressions which must guide them in the selection of products." *Id.*

11   Defendant has completely encompassed Plaintiff's JAM® mark in its BOLD & JAMMY

12   mark. In so doing, Defendant has created confusing similarity. *Perfumebay.com Inc. v. eBay, Inc.*,

13   506 F.3d 1165, 1174 (9th Cir. 2007) (determining marks similar because "Perfumebay"

14   incorporates the "eBay" trademark in its entirety).

15   Furthermore, as used in the marketplace, the BOLD & JAMMY mark is the most dominant

16   text on Defendant's wine appearing in the center of the packaging in a thick, bold font measuring

17   4.25 inches high. The mark FRANZIA appears in a much thinner, subtler font measuring only 1.5

18   inches high near the top of the package. Thompson Decl. Exs. E, F; Durand Decl. ¶ 39

19   (comparable measurements for RICH & BUTTERY). Defendant's packaging further emphasizes

20   the term JAMMY as it appears in the center of the package on its own line, separate from the

21   terms "BOLD &," in a font twenty-five percent larger than the term FRANZIA. *See* Thompson

22   Decl. Exs. E, F; Durand Decl. ¶ 39 (comparable measurements for RICH & BUTTERY).

23   Given the manner of use of the mark on Defendant's packaging, consumers will focus on

24   the BOLD & JAMMY mark—making confusion with JAM® more likely. *See Beer Nuts, Inc. v.*

25   *Clover Club Foods Co.*, 711 F.2d 934, 938 (10th Cir. 1983) (explaining "Brew Nuts" are much

26   larger than the other lettering on the package and in a different type style); *see also* Durand Decl.

27   Ex. II, Jacob L. Orquin et al., The Visual Ecology of Product Packaging and Its Effects on

28   Consumer Attention, Journal of Business Research at 21 (packaging elements central to the brand

16543828.1

1   are more conspicuous in terms of salience, size, and distance to center of the packaging). Based on

2   comparable advertising for the sister wine, RICH & BUTTERY, JaM Cellars anticipates that the

3   centrality of the BOLD & JAMMY mark will also be demonstrated by Defendant's use of point-

4   of-sale materials. BOLD & JAMMY is likely to appear separate from other elements of the

5   packaging, as well as in Defendant's public references to the product as BOLD & JAMMY.

6   Durand Decl. Ex. I (Cooney Depo. 60:03-61:17, 92:23-93:18, 168:11-169:20, 170:16-171:15);

7   Thompson Decl. Ex. F. Thus, consumers with a general recollection of Plaintiff's JAM® brand

8   will be confused upon encountering Defendant's BOLD & JAMMY wine.

9       Given Defendant's intentional, prominent use of JaM Cellars' JAM® mark on its

10   packaging, there is also a strong likelihood of initial-interest confusion. This occurs where, "due to

11   a competitor's use of another's trademarked term, the consumer is diverted to that competitor's

12   product at some point in the search process, but ultimately is not confused at the point of any

13   transaction." *Tokyo Broad. Sys. v. Am. Broad. Companies, Inc.*, 2009 WL 10668456, at *4 (C.D.

14   Cal. Aug. 12, 2009); *see also Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d

15   1394, 1405 (9th Cir. 1997). Thus, consumers with a general recollection of JaM Cellars' JAM®

16   brand who come across Defendant's late-comer BOLD & JAMMY will be drawn to Defendant's

17   wine due to its prominent use of the term JAM. Even if consumers ultimately realize that BOLD

18   & JAMMY is not made or sponsored by JaM Cellars, they may still purchase it due to the greater

19   volume of wine in the package and similar price points relative to JAM®.

20       Finally, if all the above were not enough, Defendant's launch of BOLD & JAMMY joins

21   its launch of RICH & BUTTERY ██████████████████—both with the same format of

22   packaging that is different than Defendant's previous wines. This creates a consumer perception of

23   the two—RICH & BUTTERY and BOLD & JAMMY—as a linked pair. Consumers may well see

24   the two near each other in shelves or in marketing, as retailers, not producers, have exclusive

25   control as to how wine is presented in store. As mentioned, ████████████████████

26   ████████████████████████████████████████████████████████

27   ████████████████████     In turn, retailers taking such not-so-subtle suggestions and seeking

28   to capitalize on the sales success of BUTTER® and JAM® wine being jointly marketed and sold

16543828.1

1    together will be able to do so by appealing to consumers by jointly presenting this lower-priced

2    duo in the store as a new second tier from JaM Cellars. *See Palm Bay Imports, Inc. v. Veuve*

3    *Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1376 (Fed. Cir. 2005) (wine

4    purchasers familiar with different priced wines being offered under similar marks from same

5    producer). Many wineries offer SKUs at different price points under the same brand, or the same

6    wine as both a bottle and a box. *See, e.g.*, Durand Decl., Ex. LL (showing Defendant's IMAGERY

7    wine for sale at $14.99 and $65) and Ex. MM (showing BAREFOOT and NAKED GRAPE wines

8    available for sale in both bottles and boxes). This pairing of RICH & BUTTERY and BOLD &

9    JAMMY is one more way in which Defendant creates a likelihood of confusion with JaM Cellars.

10        Given these facts , and given that similarities in how the marks are used in the marketplace

11   outweigh perceived differences, Defendant's use of JAM in BOLD & JAMMY—and overall

12   emphasis on that use in its packaging—lean this confusion factor in favor of Plaintiff JaM Cellars.

13            **2.      Defendant's goods at issue are identical to those of Plaintiff JaM**
                 **Cellars.**

14

15        "Goods or services that are closely related are generally more likely than unrelated goods

16   or services to confuse the public as to their sources." *La Quinta Worldwide, LLC v. Q.R.T.M., S.A.*

17   *de C.V.*, 762 F.3d 867, 875 (9th Cir. 2014) (citation omitted)." For related goods, the danger

18   presented is that the public will mistakenly assume there is an association between the producers

19   of the related goods, though no such association exists. The more likely the public is to make such

20   an association, the less similarity in the marks is requisite to a finding of likelihood of confusion."

21   *Sleekcraft*, 599 F.2d at 350 (citation omitted). The public is likely to make such an association

22   "when the goods are complementary, the products are sold to the same class of purchasers, or the

23   goods are similar in use and function." *Id.*

24        Plaintiff JaM Cellars' JAM® brand is used with Cabernet Sauvignon; Defendant's BOLD

25   & JAMMY is also used to designate Cabernet Sauvignon; so the goods under the two marks are

26   identical. *Compare E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 457, 464

27   (N.D. Cal. 1991) (wine from different countries made from different varietals still similar); *Palm*

28   *Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1376

(Fed. Cir. 2005) (goods are the same where Champagne houses offer both expensive Champagne and sparkling wine under $10 per bottle under similar marks). This likelihood-of-confusion factor weighs heavily in favor of JaM Cellars.

### 3. Plaintiff JaM Cellars' JAM® mark is valid and strong.

As mentioned, Plaintiff JaM Cellars' JAM® mark is federally registered and incontestable. Thompson Decl. Ex. C. The courts have established that there are two components in determining the strength of a mark: "the mark's recognition in the market (i.e., its commercial strength) and the mark's inherent distinctiveness (i.e., its conceptual strength)." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017). The evidence demonstrates that JaM Cellars' JAM® mark is strong and therefore entitled to a broad scope of protection.

#### a. Plaintiff JaM Cellars' JAM® mark is commercially strong.

Since 2009, JaM Cellars' sales of its JAM® wine have been in excess of $17.9 million, and sales of all JaM Cellars' wines have been in excess of $241.7 million. Truchard Decl. ¶ 4. JAM® is sold in all fifty states, in all major retail outlets, is available online, and has had over 1.64 million bottles sold nationwide. Truchard Decl. ¶ 4. JaM Cellars has expended well over $31,300,000 in advertising and marketing its wines, including radio advertising, social media advertising, billboard advertising, concert and event sponsorships, direct marketing, promotions, wine tastings, catalog and print advertisements, website production, and point-of-sale materials. Truchard Decl. ¶ 8. Since 2015, JaM Cellars has spent nearly $2,100,000 sponsoring music festivals across America alone, reaching hundreds of thousands of attendees. Truchard Decl. ¶ 9. Further, JaM Cellars' digital advertising in connection with some of these festivals receives roughly 500 million impressions annually. Truchard Decl. ¶ 9. The Cabernet wines that JaM Cellars sells under its JAM® mark have also gained accolades such as Gold, Silver, and Bronze Medals from the TEXSOM International Wine Awards, and the 2015 varietal received 90 points out of 100 from Wine Enthusiast. Truchard Decl. ¶ 13.

#### b. Plaintiff JaM Cellars' JAM® mark is conceptually strong.

The obviousness of a mark's connection to the goods or services, and thereby its conceptual strength, turns on whether it is arbitrary, fanciful, suggestive, descriptive, or generic.

1    *Fortune Dynamic*, 618 F.3d at 1032-33. Suggestive marks "suggest a product's features and

2    require consumers to exercise some imagination to associate the suggestive mark with the

3    product." *JL Beverage Company v. Jim Beam Brands Co.*, 828 F.3d 1098, 1107 (9th Cir. 2016).

4    "'A suitable starting place' for attempting to draw the line between a suggestive and a descriptive

5    mark 'is the dictionary.'" *Fortune Dynamic*, 618 F.3d at 1033.

6          By its very definition, Plaintiff's mark is at worst suggestive since the wine is not made

7    from jam and consumers would need to create some association in their minds between jam and

8    wine and conclude that the term is a reference to the taste of the wine or the mouthfeel. *See*

9    Thompson Decl. Ex. M (dictionary definitions of "jam"); *see also* Durand Decl. Ex. I (Cooney

10   Depo. 103:21-25). Indeed, other evidence indicates that Plaintiff's mark is also arbitrary to some

11   consumers, who make no association between the word "jam" and wine, except to the extent that

12   JAM refers to JaM's Cabernet Sauvignon. Truchard Decl. ¶ 17; Durand Decl. Ex. A (Truchard

13   Depo. 167:14-168:4). Indeed, the names of JaM Cellars' wines are intended to be playful. In

14   addition to its JAM® Cabernet Sauvignon and BUTTER® Chardonnay, JaM Cellars also

15   produces a sparkling wine called TOAST, a Sweet White named SUGAR, and a Dry Rosé called

16   CALIFORNIA CANDY. These names were picked arbitrarily in connection with these playful

17   themes. Truchard Decl. ¶ 17. And, last but not least, JAM has multiple meanings here—JAM also

18   stands for "John" and "Michele," the two vintners behind JaM Cellars. Truchard Decl. ¶ 2.

19         Finally, federally-registered marks are presumed to be inherently distinctive:

20         Federal registration of a trademark creates a presumption that the mark is valid, and where
      the PTO registers a mark without proof of secondary meaning, "the presumption is that the

21         mark is inherently distinctive." *Boldface Licensing & Branding v. By Lee Tillett, Inc.*, 940
      F. Supp. 2d 1178, 1186 (C.D. Cal. 2013) (quoting *Brookfield Communications, Inc. v.*

22         *West Coast Entertainment Corp.*, 174 F.3d 1036, 1113-14 (9th Cir. 1999)).

23   Further, an incontestable registration such as plaintiff's JAM® registration cannot be challenged

24   on the ground that the mark is merely descriptive, and Plaintiff may rely on incontestability to

25   enjoin infringement. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 205 (1985). In

26   sum, JaM Cellars' JAM® mark is strong.

27           **4.**      **Defendant uses the same marketing channels as Plaintiff JaM Cellars.**

28         Where wines at issue in a trademark infringement proceeding are both sold through retail

-19-                           Case No. 4:19-cv-01878-HSG
(Consolidated Case)
16543828.1     PLTF JaM CELLARS, INC.'S MEMO OF Ps & As ISO MOTION FOR PRELIMINARY INJUNCTION

establishments like wine shops and liquor stores, the marketing channels factor can be found to be similar as a matter of law. *E. & J. Gallo Winery*, 782 F. Supp. at 464. Defendant's BOLD & JAMMY wine and JaM Cellars' JAM® wine are both sold in the same stores. *See* discussion, *supra*, § II.B. Accordingly, this factor supports likelihood of confusion as a matter of law.

### 5. The degree of consumer care for the goods at issue contributes to likelihood of confusion.

"Confusion between marks is generally more likely where the goods at issue involve relatively inexpensive, 'impulse' products to which the average, 'unsophisticated' consumer does not devote a great deal of care and consideration in purchasing." *E. & J. Gallo Winery*, 782 F. Supp. at 464-65. "Wine is considered a good with which the average consumer does not exercise care when purchasing." *Stark v. Diageo Chateau & Estate Wines Co.*, 907 F. Supp. 2d 1042, 1065 (N.D. Cal. 2012) (citing *E. & J. Gallo Winery*, 782 F.2d at 465 (with respect to wine drinkers, "lack of consumer sophistication significantly enhances the likelihood of confusion between the two products"); *Taylor Wine Co., Inc. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731, 734 (2d Cir.1978) ("the average American who drinks wine on occasion can hardly pass for a connoisseur of wines. He remains an easy mark for an infringer.").

Both parties' wines at issue in this case are sold at retail for less than $20 per package. *See* discussion *supra* § II.C.; *see Palm Bay Imports*, 396 F.3d at 1376 (sparkling wine sold at $25 per bottle is an inexpensive product). Accordingly, this factor supports likelihood of confusion.

### 6. Defendant The Wine Group intentionally targeted and copied Plaintiff JaM Cellars' brands such as JAM® to try to trade on JaM Cellars' goodwill.

"Where an alleged infringer chooses a mark he knows to be similar to another, one can infer an intent to confuse." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135,1148 (9th Cir. 2002). Indeed, "[t]he law has long been established that if an infringer adopts his designation with the intent of deriving benefit from the reputation of the trade-mark or trade name, its intent may be sufficient to justify the inference that there are confusing similarities." *Brookfield*, 174 F.3d at 1059 (internal quotation marks and citations omitted); *see also Sleekcraft*, 599 F.2d at 354 ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that

Case No. 4:19-cv-01878-HSG
(Consolidated Case)

PLTF JaM CELLARS, INC.'S MEMO OF Ps & As ISO MOTION FOR PRELIMINARY INJUNCTION

1  the defendant can accomplish his purpose: that is, that the public will be deceived."); *Playboy*

2  *Enterprises, Inc. v. Netscape Comm'n Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004) ("A defendant's

3  intent to confuse constitutes probative evidence of likely confusion: courts assume that the

4  defendant's intentions were carried out successfully."); *Official Airline Guides, Inc. v. Goss*, 6

5  F.3d 1385, 1394 (9th Cir. 1993) ("This factor favors the plaintiff where the alleged infringer

6  adopted his mark with knowledge, actual or constructive, that it was another's trademark.");

7  *Fleischmann Distilling*, 314 F.2d 149 at 157; *G. D. Searle & Co. v. MDX Purity Pharmacies, Inc.*,

8  275 F. Supp. 524, 529 (C.D. Cal. 1967) (adoption of similar name showed intent "to benefit from

9  excellence of plaintiff's product and good will notwithstanding fact that defendants did not intend

10  to palm off their products as product of plaintiff.").

11         As Defendant's own documents make clear, there are hundreds of words available to

12  describe wine. Durand Decl. Ex. KK . Defendant was well aware of JaM Cellars and the success

13  of its BUTTER® and JAM® brands; ██████████████████████████████████████

14  Durand Decl., Exs. K, J, F (Dubiel Depo. 15:3-7, 14-16; 16:7-17, 30:21-32:1; 33:19-34:2). It is no

15  coincidence that the words that Defendant selected to allegedly describe its ████████████

16  extension Chardonnay and Cabernet wines were not words such as "caramel" or "honey" or

17  "fruity" or "berry," but instead were words virtually identical to JaM Cellars' two main brands,

18  which it sells and markets together—BUTTER® and JAM®. Truchard Decl. ¶¶ 11-12, Ex. 5.

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  █████████████████ Durand Decl. Ex. F (Dubiel Depo. 89:1-91:11), Exs. O, Q. It then marketed

22  its RICH & BUTTERY and BOLD & JAMMY line extensions to major retailers and distributors

23  ████████████████████████████████████████████████████████

24  ████████████████████████████████████████████ Durand Decl.

25  Exs. W, I (Cooney Depo. 70:13-23). ████████████████████████████

26  ████████████████████████████████████████████████

27  ████████████████████████████████████████████████

28  ████████████████████████████████████████████████

Case No. 4:19-cv-01878-HSG
(Consolidated Case)

PLTF JaM CELLARS, INC.'S MEMO OF Ps & As ISO MOTION FOR PRELIMINARY INJUNCTION

1  ████████████████████████████ Durand Decl. Exs. U, V (Sommers Depo. 28:14-

2  29:2, 29:12-22). ███████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████

5  ██████████████████████ Durand Decl. Exs. HH, I (Cooney Depo. 158:17-159:7).

6       Defendant set out from the beginning to copy Plaintiff JaM Cellars' BUTTER® and

7  JAM® brands—and with its new launch of BOLD & JAMMY, Defendant now has its own

8  confusingly similar white and red wine pair.

9      **B.**    **There is a likelihood of irreparable injury.**

10       For its requested preliminary injunction, Plaintiff must "demonstrate that irreparable injury

11  is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). In a

12  trademark case, "[i]t is sufficient for a plaintiff to show evidence of a 'loss of control over

13  business reputation and damage to goodwill.'" *Ossur HF v. Manamed, Inc.,* 331 F. Supp. 3d 1005,

14  1017 (C.D. Cal. 2017) (quoting *Arcsoft, Inc. v. Cyberlink Corp.,* 153 F. Supp. 3d 1057, 1071 (N.D.

15  Cal. 2015) ); *Stark v. Diago Chateau & Estate Wines Co.,* 907 F. 2d 1042, 1066 (N.D. Cal. 2012)

16  ("This potential loss of goodwill or loss of control over one's reputation cannot be measured

17  precisely and may constitute irreparable harm for purposes of preliminary injunctive relief.")

18  (quoting *SunEarth, Inc. v. Sim Earth Solar Power Company*, 846 F. Supp. 2d 1063, 1083 (N.D.

19  Cal. 2012)).

20       With consumers likely to be confused about the relationship between Defendant's wine

21  and Plaintiff JaM Cellars, JaM Cellars faces loss of control over its business reputation and

22  damage to its goodwill. This is not simply theoretical. ████████████████████

23  ████████████████████████████████████████████████

24  ██████ Durand Decl. Ex. Q. This is not surprising as Defendant's wine at issue comes strictly in

25  large boxes—and therefore carries the association with cheaper, bulk wine that comes in boxes.

26  Indeed, Defendant's wine is so associated with cheap and bulk that its FRANZIA line has become

27  part of the name of a college drinking game, "Tour de Franzia," and is well-known as the wine to

28  be used for another college drinking game called "Slap the bag!" Thompson Decl. Ex. K, L. More

Case No. 4:19-cv-01878-HSG
(Consolidated Case)
PLTF JaM CELLARS, INC.'S MEMO OF Ps & As ISO MOTION FOR PRELIMINARY INJUNCTION

16543828.1

1   strikingly, although reviews are not out yet for BOLD & JAMMY, reviews for its sister wine

2   RICH & BUTTERY include many reactions that JaM Cellars would like to avoid being linked to

3   its wines. As mentioned, online consumer reviews describe Defendant's wine as "GROSS,"

4   "AWFUL," "NASTY," and "nothing buttery about it." Thompson Decl. Ex. G.

5       In contrast, JaM Cellars' JAM® wine was recognized with a Gold, Silver, and Bronze

6   Medals at the TEXSOM International Wine Awards—an event at which blind tasting leads to

7   "Judges' Selections demonstrat[ing] quality and unique character that are exceptional even

8   amongst their medal-winning peers." Truchard Decl. ¶ 13. Attaching Defendant's wine and

9   consumer perceptions to JaM Cellars' JAM® wine causes JaM Cellars to lose control over the

10   reputation of JAM® and have its goodwill in JAM® irreparably harmed—further supporting JaM

11   Cellars' request for a preliminary injunction.

12       **C.    The balance of equities tips sharply towards Plaintiff JaM Cellars here.**

13       The balance of equities tips heavily in favor of Plaintiff JaM Cellars. First, Defendant's

14   BOLD & JAMMY wine is a new product, meaning Defendant has invested less in the mark, has

15   less recognition in the marketplace, and faces less burden in having to make changes. *See Ossur hf*

16   *v. Manamed Inc.*, 331 F. Supp. 3d 1005, 1017 (C.D. Cal. 2017) ("In contrast, Defendants' product

17   is relatively new, so they will not suffer as much from having to change its trademark."). Second,

18   Defendant should have known better in the first place. As one court put it, "Defendants 'cannot

19   complain of the harm that will befall [them] when properly forced to desist from [their] infringing

20   activities.'" *Id.* (quoting *Brooklyn Brewery Corp v. Black Ops Brewing, Inc.*, 156 F. Supp. 3d

21   1173, 1186 (E.D. Cal. 2016)). *See also, e.g.*, *Boldface Licensing & Branding*, 940 F. Supp. 2d at

22   1198 ("This is precisely the type of case in which any injury that [Boldface] may suffer if

23   preliminarily enjoined may be discounted by the fact that [Boldface] brought the injury upon

24   [itself] by intentionally adopting deceptively similar trademarks and packaging.") (brackets in

25   original) (quoting *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D.

26   Cal. 2008)). Indeed, Defendant was already in the midst of its lawsuit with Plaintiff JaM Cellars

27   over Defendant's use of the term BUTTERKISSED (Case No. 17-cv-02333-WHO) ███

28   ████████████████████████████████████████████████

16543828.1

1  ██████████████████████████████████████████████████████

2  ███████████████████████████████████████ Durand Decl. Ex. O at

3  TWG0016772, Exs. Q, F (Dubiel Depo. 89:1-91:11). And Defendant launched its BOLD &

4  JAMMY wine despite ongoing litigation between the same parties over Defendant's RICH &

5  BUTTERY wine.

6      Additionally, JaM Cellars is not requesting a broad, sweeping injunction prohibiting

7  Defendant from any use of the word "JAM" (or its derivatives)—it is seeking a tailored injunction

8  prohibiting Defendant from emphasizing "JAM" or "JAMMY" in such an overpowering way that

9  consumers are likely to perceive it to be the name/brand—and become confused as to its

10 relationship with JaM Cellars. Under the requested injunction, Defendant would not be restricted

11 from writing body text such as, "This wine tastes jammy," or to use such a term in a modest font

12 that is less emphasized than a house name such as FRANZIA.

13     In sum, the balance of equities tip sharply in JaM Cellars' favor, further supporting the

14 issuance of its requested preliminary injunction.

15     **D.     The requested preliminary injunction is in the public interest.**

16     "For trademarks, the public interest is the 'right not to be deceived or confused.'" *Ossur,*

17 331 F. Supp. 3d at 1017 (quoting *Brooklyn Brewery Corp,* 156 F. Supp. 3d at 1186); *see also*

18 *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009)

19 ("avoiding confusion to consumers" is the "usual public interest in trademark cases"). With the

20 serious questions going to the merits of Plaintiff JaM Cellars' trademark claims here, and the

21 likelihood of confusion, JaM Cellars has demonstrated that its requested preliminary injunction

22 here is in the public interest.

23 **IV.    CONCLUSION**

24     Plaintiff JaM Cellars asks this Court to grant its motion and issue the specific and

25 narrowly-drawn preliminary injunction that it has requested. There are serious questions going to

26 the merits of JaM Cellars' trademark claims against Defendant The Wine Group regarding its

27 BOLD & JAMMY wine:

28     •    Defendant's own documents and testimony in a parallel case confirm that

Case No. 4:19-cv-01878-HSG
(Consolidated Case)

PLTF JaM CELLARS, INC.'S MEMO OF Ps & As ISO MOTION FOR PRELIMINARY INJUNCTION

1

██████████████████████████ Defendant did exactly that, launching two analog wines with
2 names confusingly similar to JaM Cellars' registered marks.

3 • Defendant's BOLD & JAMMY name encompasses the entirety of Plaintiff JaM
Cellar's federally-registered JAM® mark—and its packaging uses size, centrality,
4 and color to put all of the emphasis on BOLD & JAMMY.

5 • The products here are identical—Cabernet Sauvignon—and are sold in the same
channels.
6

7 • The price points here are modest, increasing the likelihood of confusion.

8 These factors in mind, consumers who have a general familiarity with JaM Cellars' JAM® brand

9 are likely to be confused upon encountering the prominence of BOLD & JAMMY in Defendant's

10 packaging.

11 Moreover, the balance of equities runs sharply in JaM Cellars' favor. Defendant knew of

JaM Cellars' name ████████████████ and knowingly and intentionally picked a
12
confusingly similar name. Defendant also has only just launched or is in process of launching its
13
new BOLD & JAMMY wine, and accordingly, does not have long-time investment in it. On the
14
other hand, JaM Cellars has a multi-year investment in its JAM® brand with considerable dollars
15
in advertising, promotion, and development. The hardship of having consumers likely to be
16
confused with, and irreparable harm to its reputation in being associated with, a less-regarded wine
17
is a far greater weight to bear—which should be removed during the pendency of this action.
18
JaM Cellars asks this Court to issue a preliminary injunction prohibiting Defendant's use
19
of JAM (or a derivative such as JAMMY) as shown in Defendant's current label design, or in any
20
label with similar size, prominence, or emphasis in the use of JAM (or a derivative such as
21
JAMMY).
22
DATED: May 14, 2020                         HANSON BRIDGETT LLP
23

24

25                                   By:      /s/ Janie L. Thompson
                                          NOEL M. COOK
26                                        GARNER K. WENG
                                          JANIE L. THOMPSON
27                                        Attorneys for Plaintiff
                                          JaM CELLARS, INC.
28